TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00281-CR







Chris Otting, Appellant



v.



The State of Texas, Appellee








FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 97-882-K368, HONORABLE BURT CARNES, JUDGE PRESIDING







 Appellant Chris Otting was charged in count one of the indictment with capital
murder of a child under the age of six years. (1) Count two alleged that the appellant intentionally
or knowingly caused serious bodily injury to a child under the age of fourteen years by
smothering, suffocating, or choking the child with a blanket, hand, or unknown object. (2) The jury
convicted appellant of reckless injury to a child, a lesser included offense under count two, and
made an affirmative finding that a deadly weapon had been used as alleged in the indictment. The
jury assessed punishment at 20 years' imprisonment and a fine of $10,000.

 On appeal, appellant presents three issues for consideration. First, appellant
challenges the factual sufficiency to support the conviction for reckless injury to a child. Second
and third, appellant contends that the trial court erred in refusing to submit to the jury the offenses
of manslaughter (3) and criminally negligent homicide (4) as lesser included offenses of capital murder
as charged in count one.


Facts


 A recitation of the facts will place the issues in proper perspective. The victim was
Jordan Otting, the year-old daughter of the 20-year-old appellant. At the time of the offense, on
or about August 12, 1997, appellant lived at the Chisholm Trail Apartments in Williamson County
with his girlfriend, Krystal Garland, their child Jordan, three-week-old baby Nathan, and
appellant's mother, Debra Otting. Jaime Piedras, a paramedic with EMS, responded to a call on
the morning of August 12, 1997. Upon arriving at the Chisholm Trial Apartments, he observed
a hysterical Krystal Garland holding Jordan, Debra Otting crying hysterically, and appellant
looking nervous. When Piedras took the child from its mother, he could tell the child was dead. 
Piedras was shown a play pen in the back of the apartment. Appellant told Piedras that this was
where Jordan slept; that Jordan was put to bed about 8:45 p.m. the previous evening and was
found dead about 8:30 a.m.; and that "they" never checked on the child during the night. Piedras
noticed that appellant was not crying and made a comment about that fact. Appellant then made
an effort to cry, but Piedras saw no tears.

 Round Rock Police Officer James Chansley was the first officer on the scene at
apartment 17. He found the mother of the child wailing, sobbing, and pleading with the child in
her arms to wake up. Appellant was somber and distraught but not crying. Later, when Chansley
spoke to appellant outside of the apartment, appellant was smoking a cigarette and appeared in
control of his emotions.

 Lieutenant Mary Ryle with the Round Rock Police Department was called to the
scene to investigate the child's death. Appellant and Krystal Garland told her that appellant put
Jordan to bed about 8:30 or 9:00 p.m. the previous evening and that he went into the bedroom
the next morning about 9 a.m. because Jordan had not awakened. Appellant told Ryle that, upon
entering the room, he saw Jordan's hand protruding out from under the bed cover. The hand was
cold and he knew something was wrong. He went to get his mother. Appellant told Ryle: "I
know it's weird, but I just can't touch a dead kid." He did not explain how he knew at that time
that Jordan was dead.

 Detective Helen Keesee came to the apartment on August 12, 1997, and spoke with
appellant. She testified that appellant had a very "flat affect." Keesee noticed a scrape or a burn
on Jordan's nose, but appellant and Krystal both said they did not observe the mark when Jordan
was put to bed the evening before.

 The State introduced three written statements given by appellant. The first
statement was given on the early afternoon of August 12, 1997. The statement principally
reiterated what appellant had told the officers earlier. Appellant did add that after he came home
from work he was playing with Jordan when she hit him in the eye with a TV remote control unit,
that he yelled at her, and then told her that he was sorry. In the second statement, taken on August
13, 1997, appellant admitted that he had scared Jordan when he yelled at her. He also
acknowledged that there was tension between Krystal and him about the baby Nathan that evening. 
Appellant explained that Nathan was still awake when Jordan was put to bed; that Nathan
awakened shortly after he had been put in bed; that Krystal accused him of having put Nathan
down when the baby was still awake; that Nathan was fed and put back to bed; that he and Krystal
argued about the matter and then went to bed; that sometime in the night Nathan awakened and
appellant got up and fed Nathan before placing him back in his crib; that about 7:30 a.m. Krystal
awakened appellant and told him to feed Nathan; that he was a "little bothered but not really
mad"; that he gave Nathan half of a bottle before Nathan fell asleep; that Krystal later "got mad"
because he had not given Nathan the full bottle; that they did not really argue "but just blew each
other off"; and it was after he had showered that he had discovered Jordan was not alive.

 Sergeant Klingensmith, who had taken appellant's statements, was concerned that
appellant had failed to mention in his first statement that he had been up during the night to feed
Nathan. Captain Dan LeMay was concerned about the stressful events in the apartment on the
night in question. The two police officers decided to talk with appellant again.

 Later on August 13, 1997, LeMay told appellant that he believed appellant had
something to do with Jordan's death. Appellant responded that he thought he had killed Jordan;
that when he put her to bed he held her down about a minute because he wanted her to go to
sleep. Appellant pushed on LeMay's shoulder to demonstrate how he had held the child down. 
When asked what the police response should be, appellant stated that he should be allowed to
attend the funeral and that a lesser charge of "involuntary manslaughter" should be filed. 
Appellant told the officers that he believed he would receive the death penalty. A third written
statement was taken from appellant following this interview. It tracked much of what appellant
told LeMay orally.

 The written statement in part stated:


I feel that I may have had something to do with Jordan's death. I think I killed her
. . . . I was trying to put her to bed and did not want her to get up. So I think I
killed her. I am not a murderer. . . . I am so sorry. I did not mean to hurt her. 
I love her . . . . So I took her to her room and laid her down. . . . She wanted to
get back up. So I put my hand on her back to let her know that she needs to lay
down and go nite-nite. I ran out of the room so she would not see me and start
crying. . . . I did not know anything was wrong until in the morning when I found
her. I had no idea that I killed her if I did. But I started feeling really guilty about
it 1 hour after.



 Cheryl Lawrence, an investigator with the Texas Department of Protective and
Regulatory Services, testified that on August 13, 1997, she interviewed Krystal Garland and
informed her that appellant had admitted suffocating Jordan. Shortly afterwards, Lawrence and
Krystal Garland met appellant. When he was made aware that Krystal knew of his admission,
appellant did not deny it. Appellant reiterated that he had placed his hand on Jordan's back and
held her so she would understand it was time to go to sleep. Appellant then volunteered to
Lawrence: "It takes at least thirty seconds to kill an animal and longer than that to kill a human
being."

 Dr. Robert Bayardo, Travis County Medical Examiner, testified that he performed
the autopsy on Jordan and determined that the cause of death was asphyxial death by suffocation. 
He explained that it would take three to five minutes to suffocate a person. The autopsy was
performed at 11:50 a.m. on August 12, 1997. Dr. Bayardo reexamined the body on August 15,
1997, when it was reported that an officer had observed bruises on the body at the funeral home. 
He found bruising on the body including a spot in the middle of the forehead and one on the back
of the body. Dr. Bayardo explained that bruises sometime do not appear until two or three days
after death. It was his opinion that the bruises occurred at the time of death although there was
a possibility that they were caused by the embalming process. Dr. Nizan Peerwani, a medical
examiner for Tarrant County, reviewed the files, photographs, police reports, and the autopsy
report. She agreed with Dr. Bayardo except that she would use "smothering" rather than
"suffocation."

 Appellant did not testify but called Krystal Garland and his mother as witnesses. 
Krystal testified that on the evening in question Jordan was getting "cranky" so appellant put her
to bed. Appellant came out of Jordan's room running and smiling, and stated: "I didn't want her
to see me." Krystal heard Jordan cry for a few minutes after appellant left the room. Krystal
related that before she went to bed at 11:30 p.m. she looked in on Jordan and saw her asleep on
her stomach; that she and appellant were awake at 4:00 a.m. to feed Nathan; and that it was after
8:00 a.m. when appellant came to the bedroom and told her something was wrong with Jordan.

 On cross-examination, Krystal denied telling Justice of the Peace Patricia Ott that
Jordan was put down at 8:30 p.m. and that she did not check on Jordan until the next morning. 
Krystal stated that at the time of the offense she was suffering from depression, was not working,
and was on probation for writing hot checks. She added that appellant paid the rent and his
mother contributed her disability check for family expenses. Krystal acknowledged that appellant
had emotional difficulties, and she admitted that she and appellant had argued on the evening in
question.

 Debra Otting testified that she was disabled, was confined to a wheel chair, and
slept on the living room floor. She related that appellant came home happy on August 11, 1997,
after his first day at a new job at a convenience store; that appellant spent a minute or forty-five
seconds in Jordan's room putting her in bed and that he "dashed" out of the room laughing; that
she heard Jordan crying after appellant left the room; and that Krystal checked on Jordan before
Krystal went to bed.

 Debra Otting also testified that appellant got up between 1:00 and 1:30 a.m. and
appeared exasperated. He was mumbling that he had worked all day, that he had to feed Nathan,
and that he was tired. She did not see appellant go into Jordan's room.

 In rebuttal, Justice of the Peace Ott testified that Krystal Garland told her that
Jordan had been put down at 8:30 p.m. and that she (Krystal) had not checked on Jordan during
the night.


The Jury Charge and Verdict


 The trial court charged the jury on capital murder as alleged in count one of the
indictment, but rejected the requested instructions on the lesser included offenses of manslaughter
and criminally negligent homicide. The trial court also submitted injury to child by intentionally
or knowingly causing serious bodily harm as alleged in count two. The lesser included offenses
of count two--reckless injury to a child and injury to a child by criminal negligence were also
submitted. The jurors were instructed that they could not convict appellant of both capital murder
and injury to a child.

 The jury rejected the capital murder count and the count that appellant intentionally
or knowingly caused serious bodily injury to a child. It found appellant guilty of recklessly
causing serious bodily injury to a child.


Factual Sufficiency


 The first issue presented is appellant's challenge to the factual sufficiency of the
evidence to support the conviction. A factual sufficiency review begins with the presumption that
the evidence supporting the judgment was legally sufficient. See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996). Appellant does not challenge the legal sufficiency of the
evidence. In a challenge to the factual sufficiency of the evidence, we view the evidence without
employing the prism of "in the light most favorable to the verdict." Id. at 129. A reviewing
court must consider all of the evidence impartially, comparing evidence that tends to prove the
existence of a disputed fact or facts with evidence that tends to disprove the fact or facts. See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The verdict or judgment is to
be set aside only when the factual finding is so against the great weight and preponderance of the
evidence so as to be clearly wrong and unjust. See Clewis, 922 S.W.2d at 129; Stone v. State,
823 S.W.2d 81, (Tex. App.--Austin 1992, pet. ref'd untimely filed). 

 In the factual sufficiency analysis, it must be remembered that the trier of fact is
the sole judge of the credibility and weight of the testimony. See Santellan, 939 S.W.2d at 164. 
An appellate court should be on guard not to substitute its own judgment in these matters for that
of the trier of fact. See id. One principle of the factual sufficiency analysis is deference to the
findings of the jury or other fact finder. See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997). "A decision is not manifestly unjust merely because the jury [or fact finder] resolved
conflicting views of the evidence in favor of the State." Id. at 410. A court of appeals is not at
liberty to "engage in fact-finding." Id. at 409.

 Appellant recognizes that a defendant who invokes the benefit of a lesser included
offense at trial is estopped from complaining on appeal that the evidence is legally insufficient to
support a conviction of the lesser offense. See State v. Lee, 818 S.W.2d 778, 781 (Tex. Crim.
App. 1981), overruled on other grounds, Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim. App.
1998); see also State v. Yount, 853 S.W.2d 6, 9 (Tex. Crim. App. 1993); Taylor v. State, 947
S.W.2d 698, 702 (Tex. App.--Fort Worth 1997, pet. ref'd); Scott v. State, 867 S.W.2d 148, 154
(Tex. App.--Austin 1993, no pet.); Tamez v. State, 865, S.W.2d 518, 519-20 (Tex. App.--Corpus
Christi 1993, pet. ref'd). Appellant agrees that the reasoning behind the rule is sound. The case
law is clear that in a situation where a defendant requests or does not object to the submission of
a lesser included offense, and thereby accepts the benefit of such a charge in the trial court's jury
instructions, the defendant is estopped from thereafter challenging the legal sufficiency of the
evidence. See Taylor, 947 S.W.2d at 702 (citing Grant v. State, 950 S.W.2d 450, 451 (Tex.
App.--Beaumont 1997, pet. ref'd)); see also Torres v. State, 979 S.W.2d 668, 671 (Tex. App.--San
Antonio 1998, no pet.) (involving reckless injury to a child conviction).

 Appellant contends that it makes no sense to extend the rule of estoppel to a factual
sufficiency challenge. Cases, however, have been decided contrary to appellant's contention. See
Reaves v. State, 970 S.W.2d 111, 118 (Tex. App.--Dallas 1998, no pet.); Bisco v. State, 964
S.W.2d 29, 30 (Tex. App.--Tyler 1997, pet. ref'd). We conclude that appellant is estopped from
challenging the factual sufficiency of his conviction for reckless injury to a child because he did
not object to and received the benefit of the instruction on the lesser included offense.

 Moreover, even if the rule of estoppel is not applicable, we have applied the factual
sufficiency standard of review to the instant case. We have examined all of the evidence
impartially, and giving due deference to the jury's verdict, we conclude that the verdict is not so
contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. Issue one as
presented is without merit. The first issue is overruled.


Failure to Charge on Lesser Included Offenses


 The second and third issues present the question whether the trial court erred in
refusing to charge the jury on the lesser included offenses of capital murder--manslaughter and
criminally negligent homicide. Appellant urges that with regard to these lesser included offenses,
the Royster test was met. See Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981);
see also Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). (5) Moreover, the
record reflects that appellant timely objected to the failure to include the lesser included offenses
and presented special requested charges. See Tex. Code Crim. Proc. Ann. arts. 36.14, 36.15
(West Supp. 1999).

 The State does not take issue with appellant about the satisfaction of the
Royster--Rousseau test or that appellant timely preserved error if there was one. The State takes
the position that the age of the child-victim was undisputed (one year and 25 days), and if the
offense was not capital murder of a child under the age of six years as alleged in count one, the
more specific lesser offense would be injury to a child of the age of 14 years or younger as
provided by section 22.04(a)(1) of the Penal Code. The State appears to argue that the submission
of the alternative second count--intentionally or knowingly causing serious bodily injury to a
child--and the lesser included offenses to that count eliminated the necessity of charging on
manslaughter and criminally negligent homicide as requested by appellant. This "special controls
over the general" type of argument was also presented to the trial judge who thereafter denied
appellant's special requested jury charges. The State cites no authority on point that evidence of
an undisputed element of a capital murder charge may limit or eliminate the necessity of the
submission of lesser included offenses (to which a party may be otherwise legally entitled) because
the undisputed element of capital murder is not part and parcel of the lesser included offenses
requested.

 Article 37.09 provides in pertinent part: "An offense is a lesser included offense
if: (1) it is established by proof of the same or less than all the facts required to establish the
commission of the offense charged . . . (3) it differs from the offense charged only in respect that
a less culpable mental state suffices to establish its commission." Tex. Code Crim. Proc. Ann.
art. 37.09(1) (West 1981). The word "individual" is used in both the manslaughter and criminally
negligent homicide statutes. See Tex. Penal Code Ann. §§ 19.04, 19.05 (West 1994). 
"Individual means a human being who has been born and is alive." Tex. Penal Code Ann. §
1.07(a)(26) (West 1994). An individual includes a child under the age of six. If evidence from
any source raises the issue of a lesser included offense or a defensive theory, it must be included
in the court's charge. See Marras v. State, 741 S.W.2d 395, 405 (Tex. Crim. App. 1987). This
is particularly true where the defendant objects to the omission of the charge or presents a special 
requested charge. See Posey v. State, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998). Moreover,
if it be the State's position that the offense of injury to a child is a lesser included offense of
capital murder of a child under the age of six, it has made no effort to demonstrate the same. We
do not reach that issue in view of the State's pleadings and the circumstances of the instant case. 
We do not agree with the State's contention. We conclude that it was error for the trial court to
have refused to charge on the lesser included offenses of manslaughter and criminally negligent
homicide.

 Having determined that there was error in the charge, we must now decide if
sufficient harm was caused by the error to require a reversal. See Hutch v. State, 922 S.W.2d
166, 170 (Tex. Crim. App. 1996). The error, being a jury charge error, must be reviewed for
harm under article 36.19 of the Code of Criminal Procedure (6) as interpreted by Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). As Almanza explains, article 36.19
separately contains the standard for both fundamental error and ordinary reversible error. See id. 
Error properly preserved by an objection will require reversal "as long as the error is not
harmless." Id. This has been interpreted to mean any harm regardless of degree. See Hutch, 922
S.W.2d at 171 (citing Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986)). If no
proper objection is made and the error is not preserved, a greater degree of harm is required. The
accused must claim "fundamental" error, and he will obtain a reversal only if the error is
egregious and creates such harm that he has been deprived of "a fair and impartial trial--in short
'egregious harm.'" Almanza 686 S.W.2d at 171; see also Bailey v. State, 867 S.W.2d 42, 43
(Tex. Crim. App. 1993).


In both situations, the actual degree of harm must be assayed in light of the entire
jury charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.


Almanza, 686 S.W.2d at 171.

 Even though a defendant preserves error by timely objection or requested
instructions, as in the instant case, the burden of proof lies with the defendant to persuade the
reviewing court that he suffered some actual harm as a consequence of the charging error. If he
does not sustain his burden, the error will not result in the reversal of the conviction. See Abdnor
v. State, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). The error's harmfulness must be
measured, at least in part, against the likelihood that the jury's verdict was actually based on
another theory of culpability unaffected by the erroneous jury charge. See Atkinson v. State, 923
S.W.2d 21, 27 (Tex. Crim. App. 1996); Govan v. State, 682 S.W.2d 567, 570-71 (Tex. Crim.
App. 1986), overruled on other grounds, Brown v. State, 716 S.W.2d 939, 945 (Tex. Crim. App.
1986); Scott v. State, 768 S.W.2d 308, 309-10 (Tex. Crim. App. 1989). Thus, the defendant may
prevail on appeal only if he shows some actual harm regardless of the theory on which the jury
based its verdict. See Atkinson v. State, 934 S.W.2d 896, 897 (Tex. App.--Fort Worth 1996, no
pet.).

 If the absence of instructions on the lesser included offenses requested and to which
the defendant is entitled, leaves the jury with the sole option either to convict the defendant of the
charged offense or to acquit him, a finding of harm is essentially automatic because the jury was
denied the opportunity to convict him of the lesser included offenses. See Saunders v. State, 913
S.W.2d 564, 571 (Tex. Crim. App. 1995). This is true because the jury, believing the accused
to have committed some crime but given the option only to convict him of the greater offense,
may choose to convict him of the greater offense, rather than acquit altogether, even though it had
a reasonable doubt he really committed the greater offense. See id. at 571 (citing Beck v.
Alabama, 447 U.S. 625, 634 (1980)).

 A different situation may occur as explained in Jiminez v. State:


A different situation is presented if the trial court submitted one lesser included
offense raised by the evidence while declining to submit another that was also
raised. Under this circumstance, the jury's options were not limited to conviction
of the greater offense or acquittal, and the risk that the jury convicted of the
greater offense despite a reasonable doubt is not so apparent. If the jury harbored
a reasonable doubt as to the defendant's guilt of the charged offense but at the same
time believed him guilty of some offense, it was not forced to choose between
conviction and acquittal, but had the option of convicting him of a lesser offense
that was submitted. That it did not do so may indicate that the failure to give the
other lesser included offense instruction was harmless error. Saunders, 913
S.W.2d at 572.



Jiminez, 953 S.W.2d 293, 300 (Tex. App.--Austin 1997, pet. ref'd).

 In Saunders, it was held that the failure to instruct on one lesser included offense
(criminally negligent homicide) did not per se engender some harm to the defendant convicted of
the greater offense charged (murder of a five-month-old infant) where the court did charge on a
different lesser included offense of murder (involuntary manslaughter). The reviewing court
reasoned that the charge error was harmless because the jury convicted the defendant of the
greater offense of murder and not the lesser offense of involuntary manslaughter. Thus, since the
jury would not have convicted Saunders of murder if it had harbored a reasonable doubt as to
Saunders's intent, the omission of the charges on criminal negligent homicide was harmless. See
Saunders, 913 S.W.2d 573-74; see also Jiminez, 953 S.W.2d at 300; Irizarry v. State, 916
S.W.2d 612, 615 (Tex. App.--San Antonio 1996, pet. ref'd). Cf. Montelongo v. State, 681
S.W.2d 47, 54-55 (Tex. Crim. App. 1984).

 In the instant case, the jury was not required by the court's charge to convict on
the greater offense or to acquit. Unlike the foregoing cases, the instant case did not involve a
conviction on the greater offense despite any flaw in submitting lesser included offenses. The
cases are, however, instructive.

 Here, the trial court submitted the greater offense (capital murder of a child) as
alleged in count one as well as the offense of intentionally or knowingly causing serious bodily
injury to a child as alleged in count two. The jury convicted appellant of recklessly causing
serious bodily injury to a child, a lesser included offense to the offense charged in the second
count which had been submitted with another lesser included offense of the second count--causing
serious bodily injury to a child by criminal negligence. Appellant was entitled to jury instructions
on manslaughter and criminally negligent homicide, both lesser included offenses of capital
murder, but we conclude that the error was harmless for the reasons which follow.

 Manslaughter and recklessly causing serious bodily injury are both second degree
felonies (7) and carry the same range of penalty. (8) Both offenses involve the same culpable mental
state of "reckless" or "recklessly." Criminally negligent homicide and causing serious bodily
injury to a child by criminal negligence are both state jail felonies (9) and carry the same range of
penalty. (10) Both involve the same culpable mental state--criminal negligence. The jury by its
verdict obviously rejected the offenses with culpable mental states of "intentionally or
knowingly"-- capital murder and injury to a child both as charged and submitted to the jury. The
jury chose to convict on the lesser included offense of the second count--recklessly causing serious
bodily injury to a child--although it had the option of convicting on causing serious bodily injury
to a child by criminal negligence. If appellant was guilty of the excluded manslaughter offense,
he was also guilty of recklessly causing serious bodily injury to a child as found by the jury, an
offense with the same penalty range. If appellant was guilty of criminally negligent homicide, he
was also guilty of causing serious bodily injury to a child by criminal negligence, an offense with
the same penalty range which the jury chose to by-pass. This demonstrates the likelihood that the
jury's verdict was unaffected by the erroneous jury charge. See Atkinson, 923 S.W.2d at 27.

 Nonetheless, appellant contends the jury charge error resulted in some harm
because the jury assessed the maximum punishment of 20 years' imprisonment. We find that
there were factors involved other than any jury charge error. At the penalty stage of the trial,
Lieutenant Mary Ryle testified that appellant's reputation for being a peaceful and law-abiding
citizen was bad. Captain LeMay, another police officer, confirmed that fact and described
appellant as having been dangerous for a long time. LeMay testified that appellant, as a juvenile,
had been adjudicated for a series of sexual offenses involving younger children. Appellant's
mother related that in 1990 she had reported appellant to the police for exposing himself to other
children and for setting fires. She acknowledged that appellant had an impulse control problem
and experienced extreme temper outbursts. She contended, however, that after three years in a
residential treatment center as a result of juvenile adjudication, appellant no longer had such
problems.

 This evidence as well as the evidence at the guilt-innocence stage of the trial was
before the jury when it assessed punishment and would have been before the jury if manslaughter
had been submitted and the jury had convicted appellant of that offense at the first stage of the
bifurcated trial.

 Appellant still urges "some harm" because of the prosecutor's argument at the
penalty stage of the trial. Appellant calls attention to three unobjected-to portions of the argument
lifted out of context. We have examined the same and find the argument to have been a proper
summation of the evidence and a plea for law enforcement. See Norris v. State, 902 S.W.2d 428,
444-45 (Tex. Crim. App. 1995); Cook v. State, 855 S.W.2d 467, 476-77 (Tex. Crim. App.
1993); Gravis v. State, 982 S.W.2d 933, 936-37 (Tex. App.--Austin 1998, pet. ref'd). The
argument was within the four permissible areas of prosecutorial argument. See Sterling v. State,
830 S.W.2d 114, 121 (Tex. Crim. App. 1992); Alejandro v. State, 493 S.W.2d 230, 231 (Tex.
Crim. App. 1973). A prosecutor may argue opinions concerning the issues in the case so long
as the opinions are based on the evidence in the record and do not constitute unsworn testimony. 
See Wolfe v. State, 917 S.W.2d 270, 281 (Tex. Crim. App. 1996). Appellant has failed to show
how this now complained-of argument could not have been made if the trial court had charged on
manslaughter or criminally negligent homicide at the guilt-innocence stage of the trial. 
Appellant's reliance upon Chase v. State, 968 S.W.2d 943 (Tex. App.--Eastland 1998, pet. ref'd)
is misplaced. In Chase, it was held that the prosecutor's jury argument could not have been made
at the penalty stage of the trial even if the requested lesser included offense had been submitted
at the guilt-innocence stage. Id. at 946. Even if that reasoning is sound, the instant argument is
clearly distinguishable from the one in Chase. (11) Appellant's second and third issues are overruled
after considering all the factors of Almanza.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Onion*

Affirmed

Filed: December 2, 1999

Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. See Tex. Penal Code Ann. § 19.03(a)(8) (West 1994).
2. See Tex. Penal Code Ann. § 22.04(a)(1) (West 1994).
3. See Tex. Penal Code Ann. § 19.04 (West 1994).
4. See Tex. Penal Code Ann. § 19.05 (West 1994).
5. The Royster--Rousseau test requires that the lesser included offense must be included
within the proof necessary to establish the offense charged, and some evidence must exist in the
record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only
of the lesser offense. See Rousseau, 855 S.W.2d at 672-73; see also Skinner v. State, 956 S.W.2d
21, 24 (Tex. Crim. App. 1997).
6. Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). Article 36.19 is applicable to any
violation of the requirements of articles 36.14 to 36.18 of the Code of Criminal Procedure. 
Article 36.14 requires the trial court to deliver to the jury "a written charge distinctly setting forth
the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 1999).
7. See Tex. Penal Code Ann. §§ 9.04(b); 22.04(e) (West 1994).
8. See Tex. Penal Code Ann. § 12.33 (West 1994). An individual guilty of a second
degree felony shall be punished by imprisonment for not more than 20 years or less than 2 years,
and by a fine not to exceed $10,000.
9. See Tex. Penal Code Ann. §§ 19.05; 22.04(g) (West 1994).
10. See Tex. Penal Code Ann. § 12.35 (West 1994). An individual guilty of a state jail
felony shall be punished by confinement in a state jail for not more than two years or less than
180 days, and by a fine not to exceed $10,000. A deadly weapon finding as in the instant case
would make the offense a third degree felony. See Tex. Penal Code Ann. § 12.35(c)(1).
11. Chase involved a one-count indictment charging the defendant with capital murder of
a child under the age of six. At the guilt-innocence stage of the trial, the trial court charged the
jury on capital murder, and at the defendant's request, without regard to whether injury to a child
was a lesser included offense to capital murder, charged on "intentionally," "recklessly," and
"negligently" causing serious bodily injury. The trial court then refused to charge on involuntary
manslaughter, a lesser included charge of capital murder supported by the evidence when
requested by the defendant. The jury convicted the defendant of recklessly causing serious bodily
injury to a child and assessed the maximum punishment. The reviewing court held that the refusal
to charge on involuntary manslaughter was error. Noting that a timely objection had been made,
the court concluded "some harm" had been shown because of the length of deliberations at the
guilt-innocence stage of the trial and the prosecutor's argument at the penalty stage. The
prosecutor had argued, inter alia, that: "There is no more serious injury than what we have here
[the death of the child]" and "there is no more extreme injury that could be caused. What we
have here is the death of a child." Chase, 968 S.W.2d at 946. The court obviously did not
examine the statutory definition of "serious bodily injury" which includes death. See Tex. Penal
Code Ann. § 1.07(a)(46) (West 1994). Moreover, no mention was made of Saunders, Irizzary,
or Jiminez. We do not deem Chase controlling and decline to follow it.



 affirmed.



 

 John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Onion*

Affirmed

Filed: December 2, 1999

Publish

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. See Tex. Penal Code Ann. § 19.03(a)(8) (West 1994).
2. See Tex. Penal Code Ann. § 22.04(a)(1) (West 1994).
3. See Tex. Penal Code Ann. § 19.04 (West 1994).
4. See Tex. Penal Code Ann. § 19.05 (West 1994).
5. The Royster--Rousseau test requires that the lesser included offense must be included
within the proof necessary to establish the offense charged, and some evidence must exist in the
record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only
of the lesser offense. See Rousseau, 855 S.W.2d at 672-73; see also Skinner v. State, 956 S.W.2d
21, 24 (Tex. Crim. App. 1997).
6. Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). Article 36.19 is applicable to any
violation of the requirements of articles 36.14 to 36.18 of the Code of Criminal Procedure. 
Article 36.14 requires the trial court to deliver to the jury "a written charge distinctly setting forth
the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 1999).
7. See Tex. Penal Code Ann. §§ 9.04(b); 22.04(e) (West 1994).
8. See Tex. Penal Code Ann. § 12.33 (West 1994). An individual guilty of a second
degree felony shall be punished by imprisonment for not more than 20 years or less than 2 years,
and by a fine not to exceed $10,000.
9. See Tex. Penal Code Ann. §§ 19.05; 22.04(g) (West 1994).
10. See Tex. Penal Code Ann. § 12.35 (West 1994). An individual guilty of a state jail
felony shall be punished by confinement in a state jail for not more than two years or less than
180 days, and by a fine not to exceed $10,000. A deadly weapon finding as in the instant case
would make the offense a third degree felony. See Tex. Penal Code Ann. § 12.35(c)(1).
11. Chase involved a one-count indictment charging the defendant with capital murder of
a child under the age of six. At the guilt-innocence stage of the trial, the trial court charged the
jury on c