11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Charles
Lee Levan, Jr. 

Appellant

Vs.      
            No. 11-01-00219-CR --  Appeal from Palo
Pinto County

State of Texas

Appellee

 

The jury
convicted appellant of the offense of murder and assessed his punishment at
confinement in the Institutional Division of the Texas Department of Criminal
Justice for a term of 35 years.[1]  Appellant alleges in his sole issue on
appeal that the trial court committed reversible error by denying his request
for a jury charge on the lesser included offense of criminally negligent
homicide.  We affirm.

The
indictment alleged that appellant intentionally or knowingly caused the victim=s death by shooting her with a firearm on or
about October 20, 2000.  Appellant gave
a written statement to the police on the morning after the shooting detailing
his relationship with the victim and his version of the incident in
question.  Appellant and the victim had
been involved in a stormy romantic relationship for approximately 4 years prior
to the incident.  They had a child together
who was almost 18 months old at the time of her mother=s death. 
Appellant and the victim were having difficulties in the months prior to
the incident.  A protective order had
been issued against appellant restricting his contact with the victim and their
daughter.  Appellant testified that he
and the victim Apatched things up@ a few days after the protective order was
issued.  However, appellant was also
having a romantic relationship with another woman during this period.  








Appellant
testified that he went to the victim=s house at her invitation at approximately 11:30 p.m. on October 20,
2000.  He had previously taken a shower
at his  girlfriend=s house. 
Upon his arrival at the victim=s house, appellant and the victim began arguing about his relationship
with the other woman.  Appellant
testified that he walked out of the house with the intention of leaving rather
than continuing the argument.  After
starting his vehicle, appellant decided to go back inside the house to get some
of his clothes.  The clothing was
located in a closet.  Appellant
testified that he picked up a A.38 special@
revolver which was located on the top shelf of the closet so that he could take
it with him.  He further testified that,
when he attempted to place the revolver into his duffel bag, the victim
attempted to grab it from him.  He
stated that the revolver accidently fired as he attempted to block the victim
from grabbing the revolver.  The victim
subsequently died as a result of a single gunshot wound to her head and neck. 

Emergency
personnel responded to the scene within a few minutes.  The first police officer at the scene
observed appellant giving the victim CPR (cardiac pulmonary
resuscitation).  The officer also
observed the revolver lying in plain view upon his arrival.  When asked what had happened, appellant
stated to the officer:  “It was an
accident.  We were looking at the gun,
and it just went off.”  Appellant
continued performing CPR on the victim until an ambulance arrived.

The
revolver recovered from the scene contained five rounds of ammunition, one of
which had been fired.  With respect to
the revolver’s origin, appellant testified that he found the revolver in the
woods near a friend’s house three days prior to the incident in question.  He gave the revolver to the victim two days
prior to her death for her protection. 
Appellant testified that he showed the victim how to use the
revolver.  He further testified that he
thought he had unloaded the revolver prior to putting it on the shelf in the
closet.  One of appellant’s friends
testified that he observed appellant placing the revolver in the closet on the
morning prior to the incident. 








Several
crime lab analysts testified about tests performed on the revolver, the victim,
and her clothing.  The pathologist who
performed the autopsy testified that the bullet entered the left side of the
victim’s neck near the base of the skull. 
The bullet traveled left to right through the victim’s neck on a
slightly upward path.  The bullet
perforated the victim’s spine during the course of its travel.  The pathologist testified that, based on her
findings, the range of fire was greater than three feet.  Gunpowder residue was found on the palm of
the victim’s right hand and on her shirt collar.  Tests performed on the revolver revealed  that it stopped depositing residue at
distances greater than six feet. 
Accordingly, the evidence showed that the range of fire between the
revolver and the victim was a distance of three to six feet.  

The State
offered the testimony of an inmate who had been incarcerated with appellant
after his arrest.  The inmate is a “jailhouse
lawyer” who assists other inmates in filing motions in their cases.  He testified that appellant sought his
assistance while awaiting trial.  The
inmate required appellant to provide him with all of the facts about appellant’s
case in order to assist him.  The inmate
testified that appellant prepared a written statement of the events.  The version of the events which appellant
provided to the inmate differed from what appellant told the police and the
jury.  As per the inmate’s version,
appellant intentionally fired the revolver in order to scare the victim from
calling the police.  However, appellant
did not intend for the bullet to strike her when he fired the revolver.

Appellant
requested that the jury be charged on the lesser included offenses of
manslaughter and criminally negligent homicide.  See TEX. PENAL CODE ANN. § 19.04 & 19.05 (Vernon 1994).  The trial court only granted appellant’s
request with respect to the charge on manslaughter.  Appellant asserts on appeal that he was also entitled to a charge
on the lesser included offense of criminally negligent homicide.  A defendant is entitled to a charge on a
lesser offense only if the lesser offense is a “lesser included offense” of the
offense charged and only if there is some evidence that would permit the jury
rationally to find that, if the defendant is guilty, he is guilty only of the
lesser offense.  See Rousseau v. State,
855 S.W.2d 666, 672 (Tex.Cr.App.), cert. den’d, 510 U.S. 919
(1993).  The credibility of the evidence
and whether it conflicts with other evidence or is controverted may not be
considered in determining whether an instruction on a lesser included offense
should be given.  See Banda v. State,
890 S.W.2d 42, 60 (Tex.Cr.App.1994), cert. den’d, 515 U.S. 1105
(1995).  Regardless of its strength or
weakness, if any evidence raises the issue that the defendant was guilty only
of the lesser included offense, then the charge must be given.  See Medina v. State, 7 S.W.3d 633, 638
(Tex.Cr.App.1999), cert. den’d, 529 U.S. 1102 (2000).








Criminally
negligent homicide is a lesser included offense of murder.   See Thomas v. State, 699 S.W.2d 845, 847 (Tex.Cr.App.1985).  We must, therefore, determine if there is
some evidence that would allow a rational jury to find that, if appellant is
guilty, he is guilty only of criminally negligent homicide.  A person commits criminally negligent
homicide “if he causes the death of an individual by criminal negligence.”   Section 19.05.  TEX. PENAL CODE ANN. § 6.03(d) (Vernon  1994) defines criminal negligence as follows:

A person
acts with criminal negligence, or is criminally negligent, with respect to
circumstances surrounding his conduct or the result of his conduct when he
ought to be aware of a substantial and unjustifiable risk that the
circumstances exist or the result will occur. 
The risk must be of such a nature and degree that the failure to
perceive it constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances as viewed from the
actor's standpoint. 

 

The charge of criminally
negligent homicide is required in a particular case if the record contains
evidence showing that the defendant was unaware of the risk or that he failed
to perceive the risk created by his conduct.  Thomas v. State, supra at 850-51.

An
allegation of accidental discharge of a gun does not necessarily raise the
issue of criminally negligent homicide. 
Thomas v. State, supra at 850. 
The attendant circumstances from which the defendant's mental state can
be inferred must be collectively examined in light of the definition of
criminally negligent conduct.  Thomas v.
State, supra at 850. Other evidence raising the issue of whether a defendant
was aware of the risk must be presented before such charge is required. Thomas
v. State, supra at 850.  “Evidence that a defendant knows a gun is
loaded, that he is familiar with guns and their potential for injury, and that
he points a gun at another, indicates a person who is aware of a risk created
by that conduct and disregards the risk."    Thomas v. State, supra at 850.








In Thomas,
there was evidence that the defendant knew the gun was loaded, that he was
familiar with guns and the potential for injury, and that he pointed a gun
toward someone else.  Thomas v.
State, supra at 851-52.  Unlike the
facts in Thomas, testimony was offered showing that appellant had only
recently acquired the revolver. 
Appellant indicated in his written statement to the police that he
thought the revolver was unloaded.  He
further testified that the revolver fired as a result of the victim attempting
to grab it from his hand as he attempted to place it in a duffel bag. Viewing
the evidence in the light most favorable to appellant's theory, there is
evidence that he may have been unaware of or failed to perceive the risk associated with
scuffling over the
revolver.  As noted by the court in Thomas,
evidence of accidental discharge, coupled with the defendant’s belief that the
gun was not loaded, raises an inference that the defendant did not perceive a
risk of injury or death.  See Branham v.
State, 583 S.W.2d 782 (Tex.Cr.App.1979). 
Accordingly, we agree with appellant’s contention that the trial court
erred in failing to charge the jury on the theory of criminally negligent
homicide.  However, we find that the
trial court did not commit reversible error in failing to give the requested
charge.

In
Saunders v. State, 913 S.W.2d 564, 571 (Tex.Cr.App.1995), the Court of Criminal
Appeals discussed the harm analysis to be applied when properly requested
instructions on lesser included offenses have not been given to the jury.  In instances in which the trial court
refused to instruct the jury on any properly requested lesser included
offenses, a finding of harm is essentially automatic because the jury was
denied the opportunity to convict the defendant of the lesser included
offenses.  Saunders v. State, supra at
571; see Otting v. State, 8 S.W.3d 681, 689 (Tex.App. - Austin 1999, pet=n ref=d, untimely filed).  This is
true because the jury, believing the accused to have committed some crime but
given the option only to convict him of the greater offense, may choose to
convict him of the greater offense, rather than acquit altogether, even though
it had a reasonable doubt as to whether he really committed the greater
offense.  Saunders v. State,
supra at 571.  A different situation may
occur, however, when the jury is charged on some of the requested lesser
included offenses.  As explained in Jiminez
v. State, 953 S.W.2d 293, 300 (Tex.App. - Austin 1997, pet=n ref'd):

A different situation is presented if the
trial court submitted one lesser included offense raised by the evidence while
declining to submit another that was also raised.  Under this circumstance, the jury’s options were not limited to
conviction of the greater offense or acquittal, and the risk that the jury
convicted of the greater offense despite a reasonable doubt is not so
apparent.  If the jury harbored a reasonable
doubt as to the defendant’s guilt of the charged offense but at the same time
believed him guilty of some offense, it was not forced to choose between
conviction and acquittal, but had the option of convicting him of a lesser
offense that was submitted.  That it did
not do so may indicate that the failure to give the other lesser included
offense instruction was harmless error. 









 

The
culpable mental states required for manslaughter and criminally negligent
homicide are  similar.  Thomas v. State, supra at 849.  A person commits the offense of manslaughter
“if he recklessly causes the death of an individual.”  Section 19.04.  As per
TEX. PENAL CODE ANN. § 6.03(c) (Vernon 1994):

A person acts recklessly, or is reckless, with respect to
circumstances surrounding his conduct or the result of his conduct when he is
aware of but consciously disregards a substantial and unjustifiable risk that
the circumstances exist or the result will occur.  The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor’s
standpoint.

 

Manslaughter and
criminally negligent homicide both involve death caused by a risk created by the
defendant.  Thomas v. State, supra at
849.  If the defendant is aware of the
risk his conduct creates but consciously disregards it, his conduct is reckless
and, therefore, constitutes manslaughter. 
Thomas v. State, supra at 849. 
If the defendant is not aware of the risk his conduct creates, he is
criminally negligent if he should have been aware of the risk his conduct
created.  Thomas v. State, supra at 849.  

In order
for the jury to have convicted appellant of either manslaughter or criminally
negligent homicide, it would have had to have found that the victim’s death was
not caused by appellant intentionally or knowingly causing her death but rather
by some risk created by appellant either knowingly or unknowingly.  The inclusion of the instruction on
manslaughter presented the jury with an option for convicting appellant for
causing the victim’s death by a risk created by his conduct.  The jury rejected this option by finding
that appellant intentionally or knowingly caused the victim’s death.   If
the jury had harbored a reasonable doubt that appellant intentionally or
knowingly caused the victim’s death, it would not likely have convicted him of
murder anyway for lack of an acceptable compromise.  See Saunders v. State, supra at 573-74.  It is more likely the jury convicted appellant of murder because
it believed that his intent had been to intentionally or knowingly cause the
victim’s death.   See Saunders v. State,
supra at 573-74.  The omission of the
charge on criminally negligent homicide was, therefore, harmless.  Appellant’s sole point of error is
overruled.








The
judgment of the trial court is affirmed.

 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

November 21, 2002

Publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot, C.J., and

McCall, J., and Dickenson, S.J.[2]











     [1]The jury additionally imposed a fine of $10,000.





     [2]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.