# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00190-CR

**James Matthew Castillo, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 07-1183-K368, HONORABLE BURT CARNES, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

James Matthew Castillo was convicted of burglary of a habitation. The jury assessed sentence at 16 years in prison. Castillo contends that the court erred by denying his request for an instruction on the lesser-included offense of criminal trespass of a habitation and denying his request for a mistrial based on the State's improper comments on parole during jury argument. We affirm.

Steven Michalik testified that Castillo approached him while he was mowing a lawn at his job as a nursing home's handyman in Granger, Texas, on the afternoon of August 6, 2007. Castillo asked to borrow money and a lawnmower, but Michalik testified that he told Castillo he had neither to lend. Michalik also testified that he told Castillo he was going to go straight home after work at about 5:30 p.m. Instead of going home, Michalik went to his uncle's house. Michalik and Castillo were acquainted with one another. They had socialized in the past, and Castillo had rebuilt Michalik's patio six or seven years earlier. However, Michalik testified that he had not

socialized with Castillo since then other than to speak with him occasionally in town. Michalik testified that he was not inclined to socialize with Castillo on the day in question because he was concerned it would lead to drinking alcohol, which would violate the terms of his probation. Michalik testified that he did not give Castillo permission to enter his house.

Michalik's sister, Sharon Cervenka, testified that Castillo came to her parents' house at about 6:30 p.m. looking for Michalik. She said that, when she told him Michalik was not there, Castillo seemed disoriented and mad. He drove quickly to Michalik's nearby house. Noting that Michalik's truck was not at this house—indicating that he was not home—Cervenka and her mother drove to Michalik's house to see what Castillo was doing. Appellant's unoccupied truck was parked with the engine running and the front door to Michalik's house was open. When Cervenka honked the horn twice, Castillo exited with his hands raised and proclaimed that the door had been open and he had not done anything. When Cervenka said she would call the police, Castillo left.

Williamson County Sheriff's Department deputy Eric Thomas responded to the scene. He noted that the front door appeared to have been kicked in. The door had an impact mark and the door knob was broken. Thomas testified that the damage appeared to be very recent. A glass pane in a china cabinet had been loosened. Thirty-three pieces of china missing from the cabinet were found in a pillow case on a chair near the cabinet. Eighteen fingerprints from the china were matched to Castillo's fingerprints. Michalik testified that he had inherited the china less than two years earlier.

Castillo contends by his first issue that the trial court erred by rejecting his request that the jury be instructed on the lesser-included offense of criminal trespass of a habitation. We

2

review the decision using a two-step process. *See Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). The first step—determining whether an offense is a lesser-included offense of the alleged offense—is a question of law. *Id*. It does not depend on the evidence produced at the trial. Courts compare the elements of the offense as alleged in the indictment with the elements of the purportedly included offense. *Id*. In the second step, courts assess whether any evidence supports giving the instruction to the jury. "A defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Id*. at 536 (citing *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App.1994)). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to an instruction on a lesser-included offense. *Id*. The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Id*. (citing *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)). If the failure to instruct the jury on the lesser-included offense was error, the court must analyze whether the error was harmful, although harm is almost automatic when a court omits a necessary charge on a lesser-included offense. *Otting v. State*, 8 S.W.3d 681, 689 (Tex. App.—Austin 1999, pet. ref'd untimely filed).

Castillo was charged with burglary of a habitation under alternate theories: without the effective consent of the owner, he (1) entered the habitation with the intent to commit a theft, or (2) intentionally or knowingly entered the habitation and committed or attempted to commit theft. *See* Tex. Penal Code Ann. § 30.02 (West 2003). A person commits a criminal trespass if he enters

3

or remains in a building of another without effective consent and either (1) had notice that the entry was forbidden, or (2) received notice to depart but failed to do so. *See id*. § 30.05. The Court of Criminal Appeals has held that the offense of criminal trespass is a lesser-included offense of burglary. *See Salazar v. State*, No. PD-0956-08, 2009 Tex. Crim. App. LEXIS 731, at *9-11, *15 (Tex. Crim. App. June 3, 2009) (concluding that notice element of criminal trespass is implicitly included in burglary of a habitation); *see also De Vaughn v. State*, 239 S.W.3d 351, 356 (Tex. App.—San Antonio 2007, pet. ref'd) (citing *Day v. State*, 532 S.W.2d 302, 306 (Tex. Crim. App. 1975)).

There is, however, no evidence in the record that would have permitted the jury rationally to convict Castillo only of criminal trespass. The evidence regarding Castillo's entry and presence in Michalik's house is the same with respect to either criminal trespass or burglary, but there is no evidence that would allow a rational jury to both find that Castillo was trespassing in the house and to ignore the clear implication of Castillo's fingerprints on the china in the pillowcase. The evidence was that Michalik inherited the china more than four years after Castillo was last in Michalik's house, that it was normally kept in the china cabinet, that it had been removed from the china cabinet and placed in a pillow case, and that eighteen fingerprints from Castillo were on the china.[1] Although there was testimony that fingerprints can last for years, there is no evidence that Castillo had touched it previously in Michalik's house or elsewhere. A rational jury might have

---

[1] Castillo asserts that the fingerprint analyst's failure to check every piece of china for fingerprints and inability to match a latent print from the china cabinet to Castillo is evidence that establishes criminal trespass as a rational alternative to burglary. We disagree. Whether Castillo's fingerprints were on every dish has no bearing on whether he was guilty only of criminal trespass.

believed that Castillo was authorized to be in Michalik's house. However, such a conclusion would have required acquittal of both offenses, not just burglary.[2] There is no evidence that would have permitted a rational jury to find that Castillo did not have permission to be in the house and that he did not attempt to take the china without Michalik's consent. Castillo's alternate scenarios involving another burglar or undisclosed party plans involving Castillo and Michalik do not include evidence that would permit conviction on criminal trespass only. Another burglar does not absolve Castillo's participation, and the party theory does not explain how Castillo could be guilty only of criminal trespass. The jury would have to decide that Castillo did not have permission to be in Michalik's house, but that there was an innocent explanation for Castillo's fingerprints on Michalik's china in the pillowcase. No evidence in the record supports such an explanation.[3] The trial court did not err

---

[2] The jury did not, in fact, come to the conclusion that Castillo was authorized to be in Michalik's house.

[3] Castillo's attempts to argue alternative inferences from evidence in the record are too tenuous. Although there is evidence that the investigating deputy initially thought Michalik was not telling the whole story, the suspicion of missing details does not support conviction only of the lesser-included offense. Also, the deputy testified at trial that he no longer suspected that details were missing. Even if the jury believed that Michalik and Castillo had a relationship closer than the casual friendship described by Michalik, there is no evidence supporting a finding that Castillo is guilty of criminal trespass only. The fact that Michalik was on probation for possession of cocaine, but claims never to have used it, does not support a finding that Castillo was guilty of criminal trespass but not burglary. The fact that Michalik did not tell police that Castillo had asked to borrow a lawnmower that Michalik claimed not to own (though he admitted his father owned one) does not bear on the burglary issue. The facts that the fingerprint examiner was not able to match any fingerprints from the china cabinet, found other unidentified fingerprints on the china, and did not analyze every piece of china for fingerprints do not support a finding that Castillo was guilty only of criminal trespass. Latent fingerprint quality is not always as high as desired, the manipulation of the china cabinet is not required to prove an element of the crime, and the presence of other fingerprints on the china or the cabinet does not provide Castillo evidence that would criminalize his presence in Michalik's house, but satisfactorily explain away his fingerprints on the china in the pillowcase.

by refusing to give an instruction on criminal trespass because there is no evidence that would allow a rational jury to find Castillo guilty of criminal trespass, but not of burglary.

By his second issue, Castillo contends that the trial court erred by denying his request for mistrial based on the State's improper argument during punishment. A trial court's denial of a motion for mistrial is reviewed for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). A mistrial is appropriate only for "highly prejudicial and incurable errors." *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). It is a mechanism to end a proceeding when the trial court faces prejudicial error that makes continuance wasteful and futile. *Id*. When the court has instructed the jury to disregard evidence or an improper statement, the jury is presumed to have followed the instruction. *See Hawkins*, 135 S.W.3d at 77. In determining whether a new trial is mandated despite an instruction to disregard an improper statement, we look at the facts and circumstances of the case to see if the trial court's instruction cured the presentation of objectionable matters before the jury. *See id*. In analyzing whether the prejudicial event is so harmful that the case must be remanded to the trial court for further proceedings, we consider the following: (1) the prejudicial effect, (2) the curative measures taken, and (3) the certainty of punishment being assessed absent the prejudicial event. *See Hawkins*, 135 S.W.3d at 77.

Castillo complains about the following actions by the trial court based on his objection to the State's argument:

> [Prosecutor]: I first want to put my spin on the charge of the Court and let you know what the charge says about parole law. Different crimes have different parole laws. You're only to consider the parole law as it applies in this particular case . . . . What that means is that no matter how long you send him to prison for, no matter how long you send him for, if he racks up no good conduct

6

time in TDC, meaning he's on bad behavior, is just horrible, the most he will serve in prison before he is eligible for parole is 15 years. Who knows? If he behaves, has good conduct time, if he racks up some of that, he could become eligible for parole in less—

[Defense]: Judge, I'm going to object to this. He's flying right in the face of the charge itself that these people are not to consider any of those things, on Page 2.

The Court: The objection is sustained.

[Defense]: Judge, I'm going to ask for a mistrial at this time. First I'm going to ask them to disregard what he just argued, your Honor.

The Court: Ladies and gentlemen of the jury, please disregard the last argument of counsel. The motion for mistrial is denied.

[Defense]: Thank you, your Honor.

[Prosecutor]: Two paragraphs later it tells you you may consider the existence of parole law and good conduct time. The system hasn't failed the defendant. He's failed himself.

Castillo also points to this question from the jury during deliberation on punishment: "How long did Mr. Castillo actually spend in prison on this last conviction (the six-year sentence)?" The court responded as follows, with no objection from the parties: "The Court under the law is not permitted to answer the question which you have presented. Please consider only the evidence and testimony introduced and the instructions which have already been given to you, and continue your deliberations."

The State's argument was consistent with the range of permissible argument described by the court of criminal appeals in *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). The court of criminal appeals found no error when a trial court allowed a prosecutor to tell

jurors that a 40-year sentence would make the defendant eligible for parole in 20 years, a 60-year sentence would make him eligible in 30 years, and a 75-year sentence would also make him eligible in 30 years. *Id*. (reversing court of appeals decision finding error). When discussing the maximum amount of time Castillo would spend in prison before being eligible for parole, the State presented an objective mathematical calculation based on the sentencing range and parole-eligibility formulas applicable to Castillo. The jury was instructed that it could consider the existence of good conduct time, but not the extent to which good conduct time might be awarded to or forfeited by the appellant. The prosecutor ventured to the edge of that permissible scope when discussing the potential effect of good-time credits. However, the argument essentially restates the instruction given the jury.

Even if the argument were improper, any transgression by the prosecutor was minor. We conclude that the instruction to disregard cured any error. Accordingly, the trial court did not err by denying the motion for mistrial.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: July 17, 2009

Do Not Publish