Janet Delores SCOTT, Appellant,

v.

The STATE of Texas, Appellee.

No. 3–92–508–CR.

Court of Appeals of Texas, Austin.

Dec. 15, 1993.

**150**

Leslie E. Vaughn, San Antonio, for appellant.

Arthur Eads, Dist. Atty., James T. Russell, Admin. Asst., Belton, for appellee.

Before JONES, B.A. SMITH and ONION,* JJ.

ONION, Justice (Retired).

Appellant Janet Delores Scott was indicted for the offense of attempted murder. A jury found her guilty of the lesser included offense of attempted voluntary manslaughter, and assessed her punishment at three years' imprisonment.

Appellant advances three points of error. Appellant contends that (1) the prosecutor impermissibly commented on her failure to testify at the guilt/innocence stage of the trial; (2) it was fundamental error for the trial court to fail to include in its charge on punishment all of the possible penalties applicable to the offense of attempted voluntary manslaughter; and (3) the trial court erred in charging the jury on the lesser included offense of attempted voluntary manslaughter when neither party had requested it and when the indictment did not give "notice of the elements that had to be proven to allege voluntary manslaughter."

The one-count indictment charged in pertinent part that on or about December 1, 1990, appellant "did then and there with the specific intent to commit the offense of murder did then and there intentionally and knowingly attempt to cause the death of an individual, Jacqueline Booker, by shooting the said Jacqueline Booker with a firearm."

A brief recitation of the facts is necessary to place the points of error in proper perspective. The offense occurred at the corner of Zephyr and Jeffries Streets near the parking lot of the VFW Club 9191 in Killeen in the early morning hours of December 1, 1990. Later on the same date, Dr. Frank Gemma treated Jacqueline Booker for gunshot wounds to her chest and lower abdomen. The doctor testified that the two wounds would have been life-threatening had they not been treated.

Booker testified that she went to the VFW Club about 10:45 p.m.; that while she was in the club there was an altercation; and that she and her friends left the club about the same time. Booker recalled that when the group was still in the club's parking lot, appellant Scott, another female, and a male ran around the group. Appellant accused someone of talking "s___" in the club and asked which one of the group wanted to fight. Appellant and Sandra Smith[1] began to fight. Booker began to walk away when appellant attacked her, and Booker responded by hitting appellant. About this time, as Booker recalled, a security guard from the club and Gregory Moon (who had been with appellant) put appellant into a white car. As appellant was leaving, Booker recalled that appellant told her, "Bitch, I'm going to get you. You hit me."

Booker related that she remained at the street corner talking to her friends; that after a few minutes she observed that the white car was back at the street corner with two people in it; and that she then saw appellant in a black Mustang automobile. As the black Mustang turned the corner, Booker saw appellant shoot at her, and she fell after being struck. Booker also heard Kaysandra Peyton screaming that she had also been shot.

---

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1988).

1. The record also reflects that this individual was referred to as Sandra Lewis.

William Polk testified that he encountered Booker and the group with her as they were coming out of the VFW Club about one o'clock in the morning; that he heard Angela Whiteside, one of the group, say that "this bitch better not come my way"; and that a woman walked up and asked Booker "which of you bitches told me not to come this way." Polk stated that Booker then hit the other woman, who was then pulled away by a security guard and the man she was with, and placed in a white car. Another woman was in the car. Shortly thereafter, the car was driven away. About ten minutes later, Polk saw the same white car at the street corner. He heard four shots fired.

Gregory Moon testified that about 5:00 p.m. in the afternoon before the shooting, appellant arrived at his apartment in her black Mustang. Moon related that he, his girlfriend, Rhonda Brown, and appellant began drinking alcoholic beverages. About 10:30 p.m., they went to the VFW Club in his white Toyota Tercel car. They danced and continued to drink until Moon and his girlfriend got into a fight. Another fight erupted in the club, the lights were turned up, and everyone was ordered out of the club. Outside, Moon heard a group with Booker say something about "bitches." When appellant and Brown walked up, Moon told them that the group was calling them "bitches." Moon recalled that one member of the group then told appellant that "she wanted a piece of" appellant, and a fight started. Moon and a security guard were able to put appellant in his car.

Moon testified that when they returned to his apartment, appellant jumped out of his car, cursing, and talking about being hit. Appellant got into her black Mustang and raced off. Moon and Brown followed in Moon's car. Moon stated that when he got in the area near the club, he saw appellant stopped at a stop sign, he heard shots, and he saw the nickel-plated firearm being held by the driver of the black Mustang. After seeing "people lying there," Moon returned to his apartment. Appellant was there and told him that she had fired at the group, she believed she hit two of them, and she hoped that she had killed them.

Payton, who was shot, testified that the white car returned to the scene just before the shooting and that Moon and appellant were in the car, but that she didn't see a gun. Whiteside testified that she saw the white car driven by Moon return to the scene just before the shooting but she did not see a gun.

The State also introduced into evidence appellant's written statement given to the police during the investigation of the shooting. In the statement, appellant admitted going to the VFW Club with Moon and Brown. She acknowledged that she got into an argument with one of the women in a group in the parking lot after they had left the club. Appellant stated that while she was arguing, a security officer grabbed her and while she was being held, one of the women in the group struck her in the face with a fist. Appellant stated that she was placed in Moon's car and taken to Moon's apartment, where she spent the rest of the night. She denied that she had ever returned to the scene. Appellant admitted she had owned a pistol, but claimed that it was stolen from her car in San Antonio on Thanksgiving before the shooting.

The defense rested with the State. The trial court charged the jury on the defense of alibi and instructed the jury not to consider appellant's failure to testify.

■ With this background, we turn to appellant's first contention that the prosecution impermissibly commented on appellant's "refusal" to testify at the guilt/innocence stage of the trial. During the opening argument, the prosecutor made reference to appellant's written statement to the police introduced as a State's exhibit: "That's where the alibi charge comes in. She says I just went home with Janet—Janet says she went home with Rhonda and Gregory and stayed at the apartment all night." Appellant's counsel, in his argument, agreed that the alibi defense had been raised by appellant's statement to the police made when she was not under arrest.

In his closing argument, the prosecutor made the following argument:

It's true there's this alibi. You can consider, you know, when weighing her statement, the opportunity to fabricate, comes in a couple months later.

The motive. What incentive she might have to say, something other than the total truth. You can consider that. What she has to gain or lose by denying the offense. But look at that alibi. Her friends Gregory Moon, Kaysandra,[2] don't you know if Kaysandra was going to say something different than Gregory Moon said, they would have brought her. They don't have to, they don't have any burden of proof. But if they want to rely upon an alibi, they want to establish an alibi, don't you know that if it's the truth, we're not going to have just one little paragraph in the statement given February. I was at the apartment after the club, and I didn't go anywhere.

Appellant's counsel objected that the argument was a comment on the failure of appellant to testify. The trial court sustained the objection and instructed the jury to disregard the argument. The mistrial motion was overruled. The prosecutor then inquired in argument where appellant's and Rhonda Brown's "kids" were, as they had been left in the apartment. He added:

Where is Rhonda Brown? A fair deduction is, they don't have anything to add to this alibi. Why, because it's not true.

The defense can subpoena these witnesses. The defense can bring them to you. The defense can have them here. The defense can put them up there.

There was no objection to this argument.

■ The failure of an accused in a criminal case to testify may not be the subject of comment by the prosecution, for such comment is in violation of the privilege against self-incrimination in Article I, section 10 of the Texas Constitution and the Fifth Amendment to the United States Constitution made applicable to the states by the Fourteenth Amendment. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Allen v. State,* 693 S.W.2d 380–81 (Tex.Crim.

App.1984); *Bird v. State,* 527 S.W.2d 891, 893 (Tex.Crim.App.1975). Moreover, such a comment also violates a mandatory statute. Tex.Code Crim.Proc.Ann. art. 38.08 (West 1979); *Montoya v. State,* 744 S.W.2d 15, 34 (Tex.Crim.App.1987); *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). The test to be applied to determine whether there has been a violation by a prosecuting attorney is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Allen,* 693 S.W.2d at 381; *Lopez v. State,* 793 S.W.2d 738, 741 (Tex. App.—Austin 1990), *pet. dism'd improvidently granted,* 810 S.W.2d 401 (Tex.Crim.App. 1991). It is not sufficient that the language might be construed as an implied or indirect allusion thereto. *Bird,* 527 S.W.2d at 894.

■ In examining the complained-of argument, it must be remembered that the proper areas of jury argument include: (1) summation of evidence presented at trial, (2) reasonable deductions from the evidence, (3) answers to argument of opposing counsel, and (4) a plea for law enforcement. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App. 1988); *Todd v. State,* 598 S.W.2d 286, 296–97 (Tex.Crim.App.1980). Moreover, challenges to jury argument should be considered in the context in which they appear. *Gaddis,* 753 S.W.2d at 398. Counsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Id.*

■ The prosecutor in the instant case directed the jury's attention to appellant's statement which was in evidence and which raised the defense of alibi. The prosecutor had the right to summarize the evidence. His other remarks were reasonable deductions from the evidence or comments upon appellant's failure to call witnesses other than the defendant on the issue of alibi which was before the jury. Such argument was proper. *McFarland v. State,* 845 S.W.2d

---

**2.** The prosecutor may have meant to refer to Rhonda Brown. Kaysandra Payton was one of the victims of the shooting.

824, 840 (Tex.Crim.App.1992); *Albiar v. State*, 739 S.W.2d 360, 362–63 (Tex.Crim.App. 1987). The failure to produce available evidence justifies an inference that it would be unfavorable to the defendant. *Id.* We cannot conclude that the prosecutor's argument was an improper comment on appellant's failure to testify. *Cook v. State*, 702 S.W.2d 597 (Tex.Crim.App.1984) and *Cherry v. State*, 507 S.W.2d 549 (Tex.Crim.App.1974), relied upon by appellant, are distinguishable on the facts. Alibi was not an issue in those cases. Point of error one is overruled.

◼ In her second point of error, appellant contends that the trial court committed fundamental error at the penalty stage of the trial by failing to include in its charge the full range of punishment applicable to the offense for which appellant was convicted. Appellant argues that the trial court excluded from the charge and the jury's consideration the lesser legal punishment of confinement in a community correctional facility for any term of not more than one year.

Attempted voluntary manslaughter is a third degree felony. Tex.Penal Code Ann. § 15.01 (West Supp.1993) & § 19.04 (West 1989). Section 12.34 of the Texas Penal Code provides:

(a) An individual adjudged guilty of a felony of the third degree shall be punished by:

(1) confinement in the institutional division of the Texas Department of Criminal Justice for any term of not more than 10 years or less than 2 years; or

(2) confinement in a community correctional facility for any term of not more than 1 year.

(b) In addition to imprisonment, an individual adjudged guilty of a felony of the third degree may be punished by a fine not to exceed $10,000.

◼ Tex.Penal Code Ann. § 12.34 (West Supp.1993).

The trial court charged the jury:

Our law provides that the punishment for attempted voluntary manslaughter is a term in the penitentiary of not less than 2 nor more than 10 years, and may include a fine of up to $10,000.00.

The charge did not authorize confinement in a community correctional facility nor mention that possibility. There was no objection to the charge. Hence, appellant relies upon fundamental charge error. It is her burden to show that the error was so egregious as to deprive her of a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984).

Under *Coody v. State*, 812 S.W.2d 631 (Tex.App.—Houston [14th Dist.]), *remanded on other grounds*, 818 S.W.2d 68 (Tex.Crim. App.1991), it would appear that the failure to submit a possible legal punishment in the jury instructions calls for reversal. *Cf. Daniell v. State*, 848 S.W.2d 145 (Tex.Crim.App. 1993). However, appellant was not eligible for placement in a community correctional facility. In response to a special issue, the jury at the guilt/innocence stage made an affirmative finding that appellant used a deadly weapon during the commission of the offense. *See* Tex.Code Crim.Proc.Ann. art. 42.12, § 3g(a)(2) (West Supp.1993). An offender is not eligible for placement in a community correctional facility unless the defendant did not use a deadly weapon during the commission of or flight from the offense as determined by the trier of the facts. 37 Tex.Adm.Code § 163.55(c)(1)(B) (1993). The trial court did not err in excluding from its charge punishment by confinement in a community correctional facility. Point of error two is overruled.

◼ The third point of error states that "it is error to charge a lesser included [sic] of murder/voluntary manslaughter 'when no side request it' and the [sic] no charging instrument gives notice of the elements that must be proven to allege voluntary manslaughter."

We shall try to untangle the point of error and respond to it as we understand it. The indictment charged appellant with attempted murder. At the guilt/innocence stage of the trial, the trial court charged on attempted murder and the lesser included offenses of attempted voluntary manslaughter and aggravated assault with a deadly weapon. There was no objection to the court's charge on the basis now urged on appeal.

**154**

The trial court is required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." Tex.Code Crim.Proc.Ann. art. 36.14 (West Supp.1993). The contents of the charge are not dependent upon a defendant's objection, or a requested charge by either party. Tex.Code Crim.Proc.Ann. arts. 36.14, 36.15 (West Supp.1993). There is no merit to appellant's initial contention in the point of error which is not even briefed. *See* Tex.R.App.P. 74(f).

 Once a trial court's jurisdiction has been properly invoked, it may proceed to judgment upon any lesser included offense that is determined from the offense charged and the facts of the case. *Mello v. State,* 806 S.W.2d 875, 877 (Tex.App.—Eastland 1991, pet. ref'd). Elements of a lesser included offense are considered to have been alleged within the elements of the greater offense alleged in the indictment. *Id.* Voluntary manslaughter is a lesser included offense of murder. *Nobles v. State,* 843 S.W.2d 503, 511 (Tex.Crim.App.1992); *Sattiewhite v. State,* 786 S.W.2d 271, 287 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990); *Brooks v. State,* 548 S.W.2d 680, 683 (Tex.Crim.App.1977). Voluntary manslaughter is death caused under the immediate influence of sudden passion arising from adequate cause, and it is a lesser included offense of murder. *Merchant v. State,* 810 S.W.2d 305, 309 (Tex.App.— Dallas 1991, pet. ref'd); *see also* Tex.Penal Code Ann. §§ 19.02, 19.04(a) (West 1989); Tex.Code Crim.Proc.Ann. art. 37.09 (West 1981). Moreover, attempted voluntary manslaughter is a lesser included offense of attempted murder. *Ex parte Buggs,* 644 S.W.2d 748, 749 (Tex.Crim.App.1983); *Cano v. State,* 663 S.W.2d 598, 603 (Tex.App.— Austin 1983, no pet.); *see also* Tex.Penal Code Ann. § 15.01 (West Supp.1993) & § 19.04 (West 1989).

The instant indictment alleged attempted murder under sections 19.02(a)(1) and 15.-01(a) of the Texas Penal Code. The indictment has been previously set forth in this opinion. The allegations therein include the elements of the lesser included offense. In submitting attempted voluntary manslaughter to the jury as a lesser included offense, the trial court did not authorize conviction on a broader basis than permitted by the allegations of the indictment. *Cf. Chew v. State,* 639 S.W.2d 27, 29 (Tex.App.—Dallas 1982, no pet.).

▬ As noted, appellant did not object to the court's charge. Outside the stated point of error, appellant appears to argue in a multifarious manner that the evidence was not sufficient for the trial court to have submitted the lesser included offense of attempted voluntary manslaughter. *State v. Lee,* 818 S.W.2d 778 (Tex.Crim.App.1991) has been decided contrary to appellant's contention. The Court of Criminal Appeals has made clear that by invoking the benefit of the lesser included offense by not objecting to its submission to the jury, appellant is estopped from complaining on appeal that the evidence failed to establish all the elements of the lesser offense. *Id.* at 781; *see also Bradley v. State,* 688 S.W.2d 847, 853 (Tex.Crim.App. 1985); *Richardson v. State,* 832 S.W.2d 168, 171 (Tex.App.—Waco 1992, pet. ref'd); *Mello,* 806 S.W.2d at 877. Point of error three is overruled.

The judgment of conviction is affirmed.