# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00452-CR

**Arnold Lee Gentry, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
## NO. 51,612, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

A jury convicted appellant Arnold Lee Gentry of attempted aggravated sexual assault. *See* Tex. Pen. Code Ann. § 15.01 (West 1994) (criminal attempt), § 22.021 (West Supp. 2002) (aggravated sexual assault). Appellant elected to have the court assess punishment, and the district court sentenced him to twenty years' confinement in the Texas Department of Criminal Justice: Institutional Division. Gentry appeals, contending the district court erred (1) in refusing to submit a jury charge on the lesser included offense of assault with bodily injury, and (2) in overruling his objections to statements by the State that Gentry argues were an attempt to shift the burden of proof. We will affirm the judgment.

The complainant testified that on October 11, 2000, she went to a neighborhood bar at about 8:00 p.m. Gentry, whom she had known for about four years, approached her and offered to buy her a beer. The complainant accepted, and she and Gentry sat and talked together until after 11:00 p.m. The complainant said she drank about two quarts of beer during the course of the

evening. She left the bar alone and walked about two blocks toward her home when someone hit her in the back of her head. She started struggling and screaming, and her attacker, whom she identified as Gentry, pulled her into an alley and started pulling off her clothes. Gentry told her "to shut up and stop screaming or he'd kill me." Gentry pushed her down and put his knee against her throat. The complainant then heard sirens, and police officers pulled Gentry off of her. The complainant was asked:

> Q: Did he ever get down on top of you like he would if he was trying to have intercourse with you?
>
> A: Yes, sir.
>
> Q: Did it appear to you that he was trying to get into your sexual organ?
>
> A: Yes, sir.
>
> Q: Trying to get his male sexual organ in?
>
> A: Yes, he was [sic] to my opinion he was trying to literally rape me.

The complainant said Gentry put his hands between her legs. The State asked, "Was he also working with his hand down there?" She answered, "Yes, he was trying to penetrate me down there." She said he hit her on the head, kneeled on her throat, and threatened to kill her. She said, "He was causing me serious bodily injury. I didn't have to think twice about it. He was inflicting pain on me." She also said she feared she would be hurt worse. The complainant said Gentry was still in the bar when she left.

Temple Police Officer Bryan testified that on October 11, 2000, he received a call that a woman was screaming. He went to the reported location and saw

2

what appeared to be someone laying on the ground and an arm going up and down in a striking motion. As I crossed across the street I could see that it was a male laying on top of a female and as I got closer to them, I noticed that the female was pinned down to the ground, male was laying on top of her.

Bryan said the woman's pants and panties were down around her ankles, and the man's pants were down below his genital area. Bryan said the man, whom he identified as Gentry, was lying on top of the woman in a manner consistent with someone trying to have intercourse with someone, and was moving his back and pelvis area up and down; the woman was screaming. Bryan yelled at Gentry to stop and then held Gentry at gunpoint while he requested assistance from another officer. Bryan said:

> [The complainant] was screaming and yelling. He was – she told me he was going to kill me [sic]. He was trying to kill me. She was – she was hysterical. It was – it was hard to, to communicate with her a whole lot at that time other than what she just kept repeating. He told me he was going to kill me. He was trying to kill me.

Bryan said it appeared that the complainant had been hit hard enough to be knocked out of her shoes. Bryan testified that Gentry used the complainant's pants to restrain her by holding them down with his legs while "she was crawling with her feet back and forth trying to move." Bryan said one of the complainant's eyes was almost swollen shut, and there were scratch marks and redness on her face and throat area.

Temple Police Officer Fudge responded to Bryan's call for backup. He testified that when he arrived, he saw Bryan pointing his gun at Gentry. Gentry was lying on top of a woman who was naked from the waist down and crying and hysterical, yelling, "[H]e's trying to kill me, he's trying to kill me." Fudge said Gentry's pants were undone and his penis was showing. Fudge said the woman's eye was swollen, she had some grass stains on her, and she was very upset. He said the

3

crime scene indicated there had been a struggle, like somebody had been either dragged or pushed. Fudge said he noticed a strong odor of alcoholic beverage on both Gentry and the complainant. He believed both Gentry and the complainant were probably highly intoxicated.

Mildred Barnwell, the owner of the bar where the complainant and Gentry met earlier in the evening, testified on Gentry's behalf. She testified that she had known Gentry for about twenty-five years and the complainant for about a year. She saw Gentry and the complainant drinking beer together. Barnwell said the complainant did not pay for any of the beer she drank and asked Barnwell for money and free beer; Barnwell did not give the complainant any money or free beer. Barnwell said the complainant asked Gentry to dance with her. They danced a slow dance together, and Barnwell said it looked to her like there were "displays of affection." She said they were "close dancing and [the complainant] was just rubbing up against [Gentry]" and Gentry was responding to her movements. Barnwell said Gentry left before the complainant and the complainant left right behind him.

In his first issue on appeal, Gentry contends the district court committed reversible error by refusing to submit a jury charge that would have authorized the jury to convict him of the lesser included offense of assault.

A person commits criminal attempt if, "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." Tex. Pen. Code Ann. § 15.01(a). "If a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt." *Id.* § 15.01(b). A person commits aggravated

4

sexual assault if without the victim's consent he (1) intentionally or knowingly causes the penetration of the victim's female sexual organ by any means or causes the victim's sexual organ to contact the sexual organ of another person, including the actor, and (2) causes serious bodily injury to the victim, by words or acts places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person, or uses or exhibits a deadly weapon in the course of the criminal offense. *Id.* § 22.021(a). A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another, threatens another with imminent bodily injury, or causes physical contact with another when he knows or should reasonably believe the other will regard the contact as offensive. *Id.* § 22.01(a) (West Supp. 2002).

A trial court must include a charge on a lesser included offense if (1) the offense is included within the proof necessary to establish the charged offense, and (2) the record contains some evidence that if the defendant is guilty, he is only guilty of the lesser offense. *Arevalo v. State*, 970 S.W.2d 547, 548 (Tex. Crim. App. 1998) (en banc) (quoting *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981)). The evidence must be sufficient for a rational jury to find the defendant guilty only of the second offense, not of the greater offense. *Id.* (quoting *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993) (en banc)). In other words, a trial court should submit a jury charge on a lesser included offense "only when that offense constitutes a valid, rational alternative to the charged offense." *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex. Crim. App. 1997) (en banc).

Assuming that aggravated assault is a lesser included offense of aggravated sexual assault, we do not believe the evidence in this case required such an instruction. The evidence

5

indicated that Gentry had his pants pulled down below his genitals and was lying on top of the screaming complainant. He had forcibly removed the complainant's pants and underwear, and was "moving his back and pelvis area up and down" as if he was trying to "have intercourse with" her. The complainant believed Gentry was trying to rape her and was in fear for her safety. Both police officers testified that the complainant was hysterical and screaming that Gentry was trying to kill her. The only evidence put forth by Gentry was Barnwell's testimony that she saw the complainant dance suggestively with Gentry and leave the bar right behind Gentry. That evidence was an apparent attempt to show that the sexual interaction was consensual. No evidence suggests that if Gentry intended to do anything to the complainant, it was only to cause or threaten bodily injury to her or to cause offensive physical contact with her. *See* Tex. Pen. Code Ann. § 22.01(a); *Arevalo*, 970 S.W.2d at 548. We overrule Gentry's first issue on appeal.

In his second issue on appeal, Gentry contends the district court erred in overruling his objection to statements made by the prosecutor during voir dire and closing arguments that Gentry argues were an attempt to shift the burden of proof from the State to Gentry.

Control of voir dire is left to the trial court's sound discretion. *Atkins v. State*, 951 S.W.2d 787, 790 (Tex. Crim. App. 1997) (en banc); *Shipley v. State*, 790 S.W.2d 604, 608 (Tex. Crim. App. 1990) (en banc). A trial court does not abuse its discretion by allowing a party to explain the law. *See Atkins*, 951 S.W.2d at 789; *Cuevas v. State*, 742 S.W.2d 331, 336 n.6 (Tex. Crim. App. 1987) (en banc).

Proper jury argument is limited to (1) summarizing the evidence, (2) drawing reasonable deductions from the evidence, (3) answering arguments made by defense counsel, and (4)

6

making pleas for law enforcement. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995) (en banc); *Harnett v. State*, 38 S.W.3d 650, 659 (Tex. App.—Austin 2000, pet. ref'd). Even if a prosecutor's argument exceeds those bounds, it is not reversible error unless, when viewed in context of the entire record, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the defendant. *Todd v. State*, 598 S.W.2d 286, 297 (Tex. Crim. App. 1980); *Harnett*, 38 S.W.3d at 659.

A defendant is presumed innocent and has no obligation to produce proof of his innocence, but he may subpoena witnesses to testify on his behalf. *See* Tex. Pen. Code Ann. § 2.01 (West 1994) (presumption of innocence); Tex. Code Crim. Proc. Ann. arts. 24.03, 38.03 (West Supp. 2002) (presumption and subpoena power). A defendant's failure to testify may not be used against him. *See* Tex. Code Crim. Proc. Ann. art. 38.08 (West 1979); *Livingston v. State*, 739 S.W.2d 311, 337 (Tex. Crim. App. 1987); *Scott v. State*, 867 S.W.2d 148, 152 (Tex. App.—Austin 1993, no pet.). However, the State may comment on a defendant's failure to subpoena an available witness or to produce available favorable evidence. *See Albiar v. State*, 739 S.W.2d 360, 362-63 (Tex. Crim. App. 1987) (en banc); *Scott*, 867 S.W.2d at 152-53.

During voir dire, the prosecutor explained the concept of reasonable doubt and told the venire panel that they were entitled to use common sense to decide if the State met its burden of proof beyond a reasonable doubt. He then said, "If there are witnesses that will help a defendant, that defendant has the right of process in a criminal case. The right to subpoena." Gentry objected, "The State is attempting to transfer the burden of responsibility to the defense." The district court overruled Gentry's objection, and the State went on to say:

The defendant doesn't have to do anything in a criminal trial other than just show up. . . . If I fail to prove beyond a reasonable doubt that there was an attempted aggravated sexual assault, obviously he would be entitled to an acquittal because you have to look to me. That's all he's required to do. To show up. He's entitled to rely upon that presumption that he's not guilty and if I don't bring you evidence to set it aside, then that presumption applies and you turn him loose.

During closing arguments, Gentry's attorney pointed out inconsistencies between the complainant's and Barnwell's testimony, and then said:

Where are the clothes? Maybe they're at [the hospital]. I don't know where they are. But I would like to see the clothes. I wish we could have seen them. Are there torn buttons off, zipper broken? Are there seams torn? If we have a crime of violence, surely there's – there's something else other than some tennis shoes laying here tied. I just wish we had the clothes.

In rebuttal, the prosecutor said, "As [Gentry's counsel] has said, we brought you the guts of it. You know, where are the clothes? The clothes are where the defense left them. I could have brought them to you but the defense could have subpoenaed them." Gentry objected that the State was trying to transfer the burden of proof, and the district court overruled Gentry's objection.

Gentry argues that the comments were "one of the first things [the jury] heard in the case and . . . one of the last things they heard," giving the jury "the impression that [Gentry] could have done, and should have done, and was required to have done something to prove his innocence." We disagree.

During voir dire, the prosecutor correctly stated that Gentry had the right to subpoena witnesses, but that the State had the burden of proof and Gentry need not put on any proof at all.

8

*See* Tex. Code Crim. Proc. Ann. arts. 24.03, 38.03. The prosecutor's voir dire comment did not shift the burden of proof from the State to Gentry. *See Atkins*, 951 S.W.2d at 789.

As for the prosecutor's statement during closing argument, the prosecutor was answering an argument made by Gentry, inferring that the clothes might have indicated that no struggle occurred. The statement was proper jury argument. *See Dinkins*, 894 S.W.2d at 357; *Harnett*, 38 S.W.3d at 659. Further, it was not improper for the State to comment on Gentry's failure to produce available evidence and there is no indication that the complainant's clothes were unavailable. *See Albiar*, 739 S.W.2d at 362-63; *Scott*, 867 S.W.2d at 152-53. The comment made during closing arguments related to the complainant's clothing was not improper jury argument. We overrule Gentry's second issue on appeal and affirm his conviction.

_____

Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   April 11, 2002

Do Not Publish