# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00077-CR

**Howard Kenneth Dermody, II, AKA Bear, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 51,813, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

---

Appellant Howard Kenneth Dermody, II appeals his conviction for capital murder. Tex. Pen. Code Ann. ' 19.03(a)(2) (West 1994). The jury found appellant guilty of the offense charged. The trial court assessed punishment at life imprisonment. The State did not seek the death penalty.

## Points of Error

Appellant advances four points of error. First, appellant complains that the trial court erred in permitting Terra Rice to testify as a State=s witness after he invoked the husband-wife testimonial and confidential communication privilege. Second, appellant contends that the trial court erred in overruling his requested jury instruction that Rice was an accomplice witness as a matter of law. Third, appellant urges that the trial court erred in admitting into evidence certain extraneous offenses. Fourth, appellant asserts that the trial court erred in overruling his objections to improper prosecutorial jury argument. We will affirm the judgment of conviction.

## Background

Appellant does not challenge the legal or factual sufficiency of the evidence to sustain the conviction as specific points of error. A brief recitation of the facts will, however, place the points of error in proper perspective.[1]

The indictment charged appellant Dermody with the capital murder of Michael Aaron Reynolds on or about December 29, 2000, in Bell County. Count I charged the murder occurred while appellant was in the course of committing or attempting to commit the offense of robbery of Reynolds. Count II charged the same offense while appellant was in the course of committing or attempting to commit the offense of kidnapping of Reynolds.

Michael Aaron Reynolds and Jacob Henry were young men in their early twenties. Reynolds was taking a year off from attending college. Both he and Henry were employed and both belonged to a musical band. They roomed together. During the latter part of 2000, the two were having some financial difficulties. The band wanted to move to San Marcos and rent a house. Money was needed for a deposit and the first month=s rent. Reynolds and Henry were three months behind on their apartment rent in Temple. Henry also needed money to get his car out of the repair shop.

Appellant was a neighbor of Reynolds and Henry, whom they had met three months or so before December, 2000. According to the evidence, appellant told Reynolds and Henry that if they could

---

[1] Neither party has presented a summary of the facts. The facts presented were tied to the arguments presented under the individual points of error.

raise $500 he could buy cocaine and turn the amount into $3000 by selling the drugs purchased. Appellant and his girlfriend, Terra Rice, went to Corpus Christi and purchased cocaine with the $500 appellant obtained from Reynolds and Henry. Upon their return to Bell County, the purchased drugs were used or given away. Reynolds and Henry pestered appellant for the return of their money. Appellant was not happy. He may have returned a hundred dollars to Reynolds and Henry. Appellant proposed a second trip to Corpus Christi if the two men could raise additional money and they could travel with appellant this time.

Appellant was a friend of Guadalupe Delarosa[2] and his brother, Joe Delarosa, who lived at 1105 W. Walker in Belton. The Delarosa brothers had organized the Demon Knights Society, a gang, and many young people frequently visited there. Appellant was not a member of the gang. Triston Hernandez lived with the Delarosa brothers. Hernandez testified that a plan was developed by appellant and the Delarosa brothers to lure Reynolds and Henry to the Walker Street address and kill them because of the difficulty over the drugs and to take money from them, whatever they had raised. Hernandez stated that on December 29, 2000, following instructions, he went to the mall where Reynolds worked and told Reynolds to come to the Delarosa house when Reynolds got off work in the early afternoon.

Reynolds and Henry arrived at the Delarosa house about 2:30 p.m. After a short conversation, Reynolds was asked to go to Joe Delarosa=s back bedroom with appellant and ALupe@ Delarosa. Hernandez and Joe Delarosa remained in the living room with Henry. The music being played was turned louder to make it difficult to hear anything from the bedroom. Appellant, in his extra-judicial confession, stated that in the bedroom he hit Reynolds with a stick, like a closet rod, that had nails in it, that

---

[2] The court reporter=s record spells the name ADelarosa@ rather than ADeLaRosa.@

3

ALupe,@ who had a handgun, forced Reynolds to kneel, and that appellant hit Reynolds with a hammer at the base of the skull rendering Reynolds unconscious. Appellant again struck Reynolds in the head with the hammer. ALupe@ then took his turn hitting Reynolds in the head with the hammer. Appellant recalled the steam rising from the holes in Reynolds=s head.

Henry was forced to give up his ATM card and his Apin number.@ Taken into the back bedroom, Henry was killed in much the same manner as Reynolds. Thereafter, Henry=s body was wrapped in a blanket. Appellant placed Henry=s body in Reynolds=s car and drove the car near Elmer King Road and carried him down a hill. In his confession, appellant stated, AI cover him up with the blanket. As you could say, out of respect.@ Appellant first left Reynolds=s car at the Belle Oaks Apartments. The car was later taken by appellant and abandoned in a ditch in McLennan County. Reynolds=s body was dumped near Davilla in Milam County.

Investigator Larry Berg of the Belton Police Department testified that Joe Delarosa led the officers to the location of both bodies. Dr. Jill Urban, a forensic pathologist, performed the autopsy on Reynolds. She was of the opinion that Reynolds died as a result of blunt force and sharp force injuries. In addition to the holes in Reynolds=s head, Dr. Urban found nine stab wounds and one incision wound. A tip of a knife was found in Reynolds=s skull. One of the knife wounds went through the thyroid cartilage in the neck, the voice box and into the esophagus. The police found a knife with a broken tip near Reynolds=s body.

**Husband-Wife Privilege**

4

In his first point of error, appellant contends that the trial court Aerred in allowing Terra Darlene Rice to testify on behalf of the State@about confidential communications between Rice and himself because of the husband-wife privilege. *See* Tex. R. Evid. 504; Tex. Code Crim. Proc. 38.10 (West Supp. 2002).

Before Terra Rice testified for the State, appellant raised the question of the husband-wife privilege. Appellant requested that Rice=s testimony be excluded altogether, but conceded that was not the current status of the law.[3] He claimed the law should be changed and the Aold rule@restored.[4] Appellant also requested that privilege be invoked for confidential communications between spouses because Rice was his wife. The State disputed that appellant and Rice were married, but if so, it claimed that the privilege

---

[3] The marital privilege does not confer power on one spouse to prevent the other spouse from voluntarily testifying. Tex. R. Evid. 504(b)(1); *Anderson v. State*, 880 S.W.2d 35, 37 (Tex. App.CTyler 1994, pet. ref'd).

[4] The accused could invoke the disqualification of his spouse as a witness under former article 38.11 of the Code of Criminal Procedure. *See Benitez v. State*, 5 S.W.3d 915, 918 (Tex. App.CAmarillo 1999, pet ref=d). Now the spouse of the accused has a privilege not to be called as a witness for the State, but the privilege can only be invoked by the witness. Tex. R. Evid. 504(b)(1); *Benitez*, 5 S.W.2d at 918. The rule does not prohibit the spouse of the accused from testifying voluntarily for the State even over objection from the accused. Rule 504(b)(1).

does not apply if the communication was made in whole or in part to enable or aid anyone to commit or plan to commit a crime or fraud. *See* Tex. R. Evid. 504(a)(4)(A).

Both the testimonial privilege and the confidential communication privilege depend upon a finding of a marital relationship. The party objecting to the disclosure must establish that the communication was a confidential communication made to his spouse while they were married. Steven Goode, et al., *Texas Practice: Courtroom Handbook on Texas Evidence*, Rule 504, Author=s comments at 345 (2002 ed.) (hereinafter Goode). The burden of proof is by a preponderance of the evidence. *Hightower v. State*, 629 S.W.2d 920, 924 (Tex. Crim. App. 1981); *Welch v. State*, 908 S.W.2d 258, 265 (Tex. App.CEl Paso 1995, no pet.).

While the burden of proof was on appellant to establish a marriage with Rice, the State, in the jury=s absence, went forward with the evidence at the hearing authorized by Rule 104. Tex. R. Evid. 104. The prosecution called Rice as a witness to prove that she was not the wife of appellant. There was no objection to the somewhat inverted procedure.

Rice testified that she and appellant had never been married, that she had not held herself out to others as being appellant=s wife, and that she did not consider herself appellant=s wife. Upon inquiry by appellant, Rice stated that appellant had not introduced her to others as his Aold lady,@ although he may have used that terminology to her in private. Rice acknowledged that after appellant was in jail for the instant offense, she had signed several letters written to him as ATerra Dermody.@ In one letter she acknowledged to appellant they had been married. AYeah I know that we are married by common law cuz (sic) we have lived together for over six months. Hell baby we have been together over a year.@ Upon

**6**

further inquiry by the State, Rice stated that in writing the letters she had Ajust been agreeing with appellant.@ and that she had never held herself out as being appellant=s wife.  In response to the trial court=s inquiry, Rice stated that she had never used appellant=s name prior to his incarceration in jail and she started using his name A[b]ecause he had brought it up to me.@

Appellant offered no evidence of a marriage between Rice and himself.  He did not claim a legal ceremonial marriage or an informal marriage under the Family Code.  *See* Tex. Fam. Code Ann. ' ' 2.402, 2.404 (West 1998).  Appellant relied on the evidence to establish a common-law marriage.  To prove a common-law marriage one must establish: (1) the parties entered into an express or implied agreement to become husband and wife; (2) they cohabitated in Texas pursuant to that agreement; and (3) they represented to the general public that they were married.  *Tompkins v. State*, 774 S.W.2d 195, 208 (Tex. Crim. App. 1987); *Welch*, 908 S.W.2d at 265.  As with a ceremonial marriage, the parties must have the legal capacity to be married.  *See Villegas v. Griffin Industries*, 975 S.W.2d 745, 750 (Tex. App.CCorpus Christi 1998, pet. denied).

The term Aspouse@ under Rule 504 means one who is legally married to another and it does not mean putative wife, significant other, or girlfriend.  *See Weaver v. State*, 855 S.W.2d 116, 120 (Tex. App.CHouston [14th Dist.] 1993, no pet.).  There was testimony that Rice and appellant lived together, but mere cohabitation is insufficient to establish a common-law marriage.  *Welch*, 908 S.W.2d at 265.  Rice testified that she only started using the Dermody name and agreeing with him they were married by virtue of the common law at his suggestion after he was in jail for the instant offense.

7

At the hearing, the trial court was the trier of fact, the judge of the credibility of the witnesses, and of the weight to be given the testimony. It could accept or reject any part of any witness=s testimony. Tex. R. Evid. 104(a). The trial court found that Rice was not appellant=s wife and was therefore eligible to testify.

The trial court is afforded broad discretion in determining questions concerning the admissibility of evidence and the existence of a privilege, and its ruling will not be reversed absent an abuse of discretion. *Welch*, 908 S.W.2d at 264; *see also Colburn v. State*, 966 S.W.2d 511, 514 (Tex. Crim. App. 1998); *McVickers v. State*, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993). Appellant did not carry his burden of proof and the trial court did not abuse its discretion.

Moreover, appellant concedes that even if married he could not prevent Rice from voluntarily testifying for the State under the testimonial privilege provided in Rule 504. Tex. R. Evid. 504. He claimed the confidential communication privilege but failed to point out which communications he claimed were privileged, if married, or that the communications did not involve the crime or fraud exception. Tex. R. Evid. 504(a)(4)(A). The first point of error is overruled.

**An Accomplice Witness as a Matter of Law?**

In his second point of error, appellant contends that the trial court erred in denying his request for a jury instruction that Terra Rice was an accomplice witness as a matter of law. The trial court, however, submitted to the jury the fact issue of whether Rice was an accomplice witness.

Article 38.14 provides:

**8**

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979).

A person is an accomplice witness if he participates before, during, or after the commission of a crime and can be prosecuted for the same offense as the defendant or a lesser-included offense of the offense charged against the defendant.[5] *See Medina v. State*, 7 S.W.3d 633, 641 (Tex. Crim. App.

---

[5] Caution should be used when determining whether a witness is an accomplice witness when the witness participated only *after* the commission of the offense to aid the defendant to avoid apprehension or prosecution. The 1974 Penal Code made some notable changes with regard to parties to a crime which have been retained in the 1994 Penal Code. *See* Tex. Pen. Code Ann. '' 7.01, 7.02 (West 1994). In the 1974 Penal Code, the distinction between a principal and an accomplice (to a crime) was abolished, and an accessory (to a person) (after the fact) was eliminated and replaced with section 38.05 of the Penal Code defining the separate and distinct crime of Ahindering apprehension or prosecution.@ *See* now Tex. Pen. Code Ann. ' 38.05 (West Supp. 2002); *Easter v. State*, 536 S.W.2d 223, 228-29 (Tex. Crim. App. 1976); *Navarro v. State*, 863 S.W.2d 191, 201 (Tex. App.CAustin 1993), *pet. ref=d*, 891 S.W.2d 648 (Tex. Crim. App. 1995). One=s acts committed after the offense is completed cannot make him a party to the offense. *Pesina v. State*, 949 S.W.2d 374, 383 (Tex. App.CSan Antonio 1997, no pet.). *See also* 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 31.263 (2d ed. 2001).

1999); *Blake v. State*, 971 S.W.2d 451, 454-55 (Tex. Crim. App. 1998). Under the accomplice witness rule, the participation of an accomplice witness must consist of some affirmative act committed by the witness to assist or promote the commission of the offense. *Kutzner v. State*, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999); *McFarland v. State*, 928 S.W.2d 482, 514 (Tex. Crim. App. 1986); *Barnes v. State*, 56 S.W.3d 221, 229-30 (Tex. App.CFort Worth 2001, pet. ref=d).

Mere presence at the scene of the crime is not enough to constitute one an accomplice witness. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). The fact that a witness anticipated that the defendant would commit the offense and nevertheless remained present is not enough to establish the witness an accomplice witness. *Kunkle*, 771 S.W.2d at 439-40. Further, a witness is not deemed an accomplice witness because he knew of the crime but failed to disclose it, or even concealed it. *Medina*, 7 S.W.3d at 641; *Barnes*, 56 S.W.3d at 230. Complicity of the witness with the accused in the commission of another or other offenses does not make the testimony of the witness that of an accomplice witness for the offense for which the accused is on trial if there is no showing of complicity of the witness in that offense. *Kunkle*, 771 S.W.2d at 439.

If the evidence is clear that a witness is not an accomplice witness, no instruction need be given to the jury as to whether the witness is an accomplice witness as a matter of law or fact. *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987); *Sexton v. State*, 51 S.W.3d 604, 614 (Tex. App.CTyler 2000, pet. ref=d). If there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law, then the court is under a duty to so instruct the jury. *Blake*, 971 S.W.2d at 455. If, however, the evidence presented by the parties is conflicting, and it is not clear whether

**10**

the witness is an accomplice witness, it is proper to leave the fact question or issue to the jury under appropriate instructions. *Id*.; *Gamez*, 737 S.W.2d at 222 (citing *Gonzalez v. State*, 441 S.W.2d 539, 541 (Tex. Crim. App. 1969)).[6]

In the instant case, Terra Rice traveled with appellant when he went to Corpus Christi to purchase cocaine with $400 or $500 belonging to Reynolds and Henry. Rice knew the purpose of the trip and of the financial difficulties that Reynolds and Henry were trying to resolve. Appellant and Rice used some of the cocaine purchased, and appellant sold the balanceCapparently without collecting money at the time. Appellant was unable to repay Reynolds and Henry or to allow them to share in the expected profits. Rice was aware of the tension between appellant and Reynolds and Henry over the matter. Rice heard appellant and others talk about Ahurting@ Reynolds and Henry. She did not believe that appellant would carry out the plan as he exaggerated when talking about criminal activities. Rice and Triston Hernandez were instructed by appellant to tell Reynolds to come to the Delarosa house when he got off work on December 29, 2000. Rice accompanied Hernandez to the mall, but it was Hernandez who delivered the

---

[6] In the past, it has been held that the submission of the fact issue of whether a witness is an accomplice witness is sufficient even though the evidence appears to preponderate in favor of the conclusion that the witness is an accomplice witness as a matter of law. *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987); *Harris v. State*, 645 S.W.2d 447, 454 (Tex. Crim. App. 1983); *see generally Gonzales v. State*, 441 S.W.2d 539, 541-42 (Tex. Crim. App. 1969). The harmfulness of any error will be discussed later in light of *Almanza v. State*, 868 S.W.2d 157, 171 (Tex. Crim. App. 1984 (op. on reh=g).

**11**

message to Reynolds, albeit in Rice=s presence. Rice was at the Delarosa house when Reynolds and Henry arrived, but she left shortly thereafter. When Rice returned, she saw Reynolds=s body in the back bedroom. Mike Meeks also arrived at the house. Luggage was taken from Meeks=s car and placed in Rice=s car. Reynolds=s body was then placed in Meeks=s car. Rice, Joe Delarosa and Preston Corroll drove in her car to her mother=s house in Davilla at appellant=s instructions. Later, appellant, Meeks, Lupe Delarosa and Hernandez appeared at Rice=s mother=s trailer. They were bloody.

Thereafter, she assisted appellant in disposing of or abandoning Reynolds=s car which appellant had already used and moved from the Delarosa house. Still later, Rice drove her mother=s truck to a location near Davilla where Reynolds=s body had been disposed of, so appellant and others could search the body for a missing weapon.

Rice was convicted of tampering with physical evidence[7] and given a ten-year sentence, after which shock probation was granted. This was not the capital murder offense with which appellant was charged and was not a lesser-included offense. It was a separate and distinct offense for actions taken *after* the commission of the offense charged against appellant. Her complicity with appellant in earlier offenses did not constitute her an accomplice witness to the instant offense. She was not present at the scene of the commission of the offense. Her failure to disclose the plan to kill Reynolds or even her concealment of the anticipated offense did not render her an accomplice witness as reflected by the authorities cited above. Rice did go with Hernandez at appellant=s suggestion to inform Reynolds to come to the Delarosa house, but Hernandez delivered the message, not Rice, although she was present. Her later

---

[7] *See* Tex. Pen. Code Ann. ' 37.09 (West Supp. 2002).

**12**

actions in aiding appellant in abandoning Reynolds=s car and assisting him in returning to the location where Reynolds=s body had been left would not constitute her a party to the offense for which appellant was charged. In view of the evidence, the trial court did not err in submitting to the jury a fact issue as to whether Rice was an accomplice witness.

Even if the trial court erred in overruling appellant=s requested instruction that Rice was an accomplice witness as a matter of law, we analyze any preserved error in light of *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). *See Saunders v. State*, 817 S.W.2d 688, 698-700 (Tex. Crim. App. 1991). *Cf. Gonzales*, 441 S.W.2d at 541-42. Reversal is required if some harm resulted to appellant because of any error. *Almanza*, 686 S.W.2d at 171; *see also* 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* ' 31.284 (West 2d ed. 2001) (hereinafter Dix).

An examination of the record shows that Rice=s testimony was sufficiently corroborated as required by article 38.14Cthere was substantial non-accomplice witness testimony tending to connect appellant with the crime charged. There was appellant=s own extra-judicial confession which was sufficient in and of itself to corroborate Rice=s testimony. *See* Dix, ' 31.307; *Romero v. State*, 716 S.W.2d 519, 523 (Tex. Crim. App. 1986); *Thompson v. State*, 54 S.W.3d 88, 94 (Tex. App.CTyler 2001, no pet.). The voluntariness and admissibility of appellant=s confession was not submitted as an issue to the jury. In addition, there was the non-accomplice witness testimony of seventeen-year-old Thomas Montgomery, who went to the Delarosa house in the late afternoon on the day in question. He saw the bloody back bedroom with the carpet pulled up and the cleaning efforts underway. Appellant came into the bloody

bedroom eating a hamburger. Appellant looked at Montgomery and said, AI made a mess, didn=t I?@ With

this evidence, we turn to the test for corroboration.

> The test as to the sufficiency of the corroboration is to eliminate from consideration the
> evidence of the accomplice witness and then to examine the evidence of the other witnesses
> with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating
> character which tends to connect the defendant with the commission of the offense. If there
> is such evidence the corroboration is sufficient; otherwise, it is not.

*Edwards v. State*, 427 S.W.2d 629, 632 (Tex. Crim. App. 1968); *see also Reed v. State*, 744 S.W.2d

112, 125 (Tex. Crim. App. 1988).

Appellant=s confession and Montgomery=s testimony tend to connect appellant with the

commission of the offense and are sufficient to corroborate Rice=s testimony and render harmless any error

in failing to charge the jury that Rice was an accomplice witness as a matter of law. The second point of

error is overruled.[8]

### Extraneous Offenses

In the third point of error, appellant contends that the trial court erred in overruling his

objections to the State=s eliciting evidence of other crimes, wrongs or acts. Appellant directs our attention

to five separate and distinct parts of the record where he claims evidence was improperly admitted

concerning his purchase, possession, use and sale of cocaine. Three separate witnesses and the State=s

---

[8] The trial court charged that Triston Hernandez was an accomplice witness as a matter of
law. Appellant raises no appellate claim that Hernandez=s testimony was not sufficiently corroborated.

opening statement to the jury are involved. Although there is a common thread running through the objections, they were presented at different times and under different circumstances. A point of error is multifarious if it contains more than one contention in a single point of error, and it normally does not present error. *Euziere v. State*, 648 S.W.2d 700, 703 (Tex. Crim. App. 1983); *Hernandez v. State*, 914 S.W.2d 226, 229 (Tex. App.CWaco 1996, pet. ref=d); *see also Thomas v. State*, 723 S.W.2d 696, 697 (Tex. Crim. App. 1986). In the interest of justice, we shall respond to appellant=s contention. *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990).

The State responds to appellant=s contentions by pointing out that the overruling of an objection will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling. *See Montemayor v. State*, 55 S.W.3d 78, 86 (Tex. App.CAustin 2001, pet. ref=d) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). The State calls our attention to a number of places in the trial record where the same evidence complained of was admitted without objection. The trial court, however, granted a number of running objections. It is almost impossible in most cases to determine where running objections begin or end. We will not therefore rely exclusively on the proposition of law as advanced by the State to dispose of this point of error.

The complained-of evidence involved the extraneous offenses arising out of appellant=s idea to take money from Reynolds and Henry to purchase cocaine, sell it, and help resolve their economic woes. Appellant purchased the cocaine in Corpus Christi, was seen in possession of it, used it and allowed others to use it, or sold it, often without collecting any money. This led to a tension between appellant and

**15**

Reynolds and Henry who attempted to get their money back. These actions led appellant to plan another trip to Corpus Christi and eventually the murder of both Reynolds and Henry. Appellant=s extraneous narcotic offenses were intermixed, interwoven, and blended with the capital murder of Reynolds as alleged.

The evidence complained of was clearly relevant under Rule 401. Tex. R. Evid. 401. As relevant, it was admissible as same transaction contextual evidence as an exception to Rule 404(b). Tex. R. Evid. 404(b); *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993) (citing *Mayes v. State*, 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991)). Rule 404(b) is neither mutually exclusive nor collectively exhaustive. *See Barber v. State*, 989 S.W.2d 822, 825 (Tex. App.CFort Worth 1999, pet. ref=d). Same transaction contextual evidence is admissible as an exception to the propensity rule only where such evidence is necessary to the jury=s understanding of the instant offense. *Rogers*, 853 S.W.2d at 33. The exception applies where several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and Ain narrating one it is impractical to avoid describing the other, and not because the other has any evidential purpose.@ *Mayes*, 816 S.W.2d at 86-87 n.4.

Because the evidence was necessary for the jury to understand the context of the offense and because it was impossible to explain the catalyst for the murder without eliciting the complained-of evidence, the evidence constituted same transaction contextual evidence. *See Barber*, 989 S.W.2d at 832. Moreover, the evidence was relevant to appellant=s motive, an expressed exception to Rule 404(b). Motive, although not an element of the offense, was established by the relationship between appellant and Reynolds, the drug deal gone sour as a result of appellant=s actions, the tension between the two as a result, and the plan to murder arising out of that background. *See Wyatt v. State*, 23 S.W.3d 18, 26 (Tex. Crim.

**16**

App. 2000) (earlier sexual assault was motive for murder and admissible). A[I]t has long been the rule in this State that the jury is entitled to know all relevant surrounding facts and circumstances of the charged offense; an offense is not tried in a vacuum.@ *Moreno v. State*, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986).

We further observe that the possible prejudicial effect of the complained-of evidence did not substantially outweigh its probative value. *See* Tex. R. Evid. 403. We conclude that the trial court did not abuse its discretion in overruling appellant=s objections to the admissibility of the evidence. The third point of error is overruled.

## Jury Argument

In the fourth point of error, appellant contends that the Atrial court erred in overruling appellant=s objections to improper prosecutorial jury argument.@ Here again, appellant presents a multifarious point of error. Appellant complains of three separate and distinct jury arguments. Appellant combines all three instances into one complaint, and presents nothing for review. *Thomas*, 723 S.W.2d at 697; *Hernandez*, 914 S.W.2d at 229. In the interest of justice, we shall respond to appellant=s contentions. *Sterling*, 800 S.W.2d at 521.

In his jury argument at the guilt/innocence stage of the trial, prosecutor Mark Kimball argued:

> And you can consider Triston=s testimony that he actually saw Jacob [Henry] robbed when they took the ATM [card] and demanded the PIN number from him when they held him down as evidence that that=s exactly what they intended to do and probably did with Aaron Reynolds.

**17**

The trial court sustained appellant=s objection that there was no evidence that anything was taken from Aaron Reynolds and the argument was a misstatement of the evidence. Kimball requested that the ruling be withdrawn because the argument was a reasonable deduction from the evidence, and the State was not required to prove that anything was actually taken to establish the robbery allegation of the capital murder indictment. The trial court withdrew its ruling, overruled appellant=s objection, and instructed the jurors that counsel=s argument was not evidence and to rely on their own memory of the evidence. Kimball then continued his argument without objection that a fair deduction from the evidence was that Reynolds was robbed just as Henry was robbed.

The record shows that Reynolds=s shoes and earrings were taken from him and his automobile was appropriated by appellant. Further, there was evidence that appellant believed Reynolds had money on his person for the second trip to Corpus Christi. Appellant=s contention that the prosecutor was arguing outside the record is without merit. Counsel is allowed wide latitude in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).

The second complained-of argument concerns the prosecutor=s reference to James Stone. The trial court submitted to the jury the fact issues as to whether Terra Rice, Mike Meeks, and James Stone were accomplice witnesses. In argument, appellant=s counsel discussed with the jury the court=s charge and urged that all three were accomplice witnesses, and reviewed the evidence regarding Stone=s activities. In his closing argument, prosecutor Paul McWilliams responded. The record reflects:

Potential accomplices are James, Mike, Terra. And you folks don=t have to get lost in that. Because let=s say you believe that all three of them are accomplices. What have you got to do? What=s that Charge tell you you=ve got to do? What did Mr. Hurley tell you you have to do ?

First of all, you have to believe their testimony. If you listen to the argument of Defense counsel, it sounded like an awful lot of what they were saying relied on what they said. They told the truth. There=s no question about that.

Why should James Stone come here in his red suit from the Sheffield Boot Camp, manacled, and lie to you?

MR. HURLEY: Your Honor, I=m going to object. The Charge clearly states the credibility of the witness in the weight to be given their testimony is the duty of the jury. And the State is trying to take that from them and substitute their ideas, and also it=s an attempt to bolster the witnesses.

THE COURT: Overruled.

Thereafter, the prosecutor continued to argue that Stone, who was fifteen years old on December 29, 2000, was not an accomplice witness. The proper areas of jury argument include: (1) summation of evidence presented at trial, (2) reasonable deductions from the evidence, (3) answer to argument of opposing counsel, and (4) a plea for law enforcement. *Gaddis*, 753 S.W.2d at 398; *Scott v. State*, 867 S.W.2d 148, 152 (Tex. App.CAustin 1993, no pet.). Here the complained-of argument was proper as a reasonable deduction from the evidence and as a response to the argument of opposing counsel. The trial court did not err in overruling appellant=s objection.[9]

_____

[9] At the time of the trial, James Stone was an inmate at the Texas Youth Council Sheffield Boot Camp on totally unrelated charges. Stone was not an accomplice witness. He came to the Delarosa house on December 29, 2000 after the offense and after both bodies had been removed. He saw the bloody bedroom. Later, he went with appellant and others to where Reynolds=s body had

**19**

In the third and last situation, the trial court sustained appellant=s objection to the prosecutor=s jury argument. It did not overrule it as claimed on appeal. The trial court thereafter referred the jury to the jury charge, and then overruled appellant=s motion for a mistrial. Appellant does not claim that the trial court abused its discretion in denying the mistrial motion. At least, he does not brief that question. *See* Tex. R. App. P. 38.1. Jury argument must be extreme or manifestly improper or inject new or harmful facts into evidence to constitute reversible error. *Gaddis*, 753 S.W.2d at 398. The fourth point of error is overruled.

---

been left. He was present when others unsuccessfully searched the body for a knife. Stone then assisted in covering the body with branches. These actions, after the fact, did not render him an accomplice witness. See discussion in footnote 2.

### The Judgment

Count I of the indictment charged the offense of capital murder while "in the course of committing or attempting to commit Robbery." Count II charged the same offense while "in the course of committing or attempting to commit kidnapping." The trial court in its jury charge submitted both counts to the jury conjunctively. The jury returned two separate verdicts finding appellant guilty of both counts. The trial court assessed a single punishment of life imprisonment. The formal judgment reflects that appellant was twice convicted for the same offense. Although there was no objection to the procedure used, both convictions cannot stand. *See* Tex. Const. art. I, ' 14; Tex. Code Crim. Proc. Ann. art. 1.10 (West 1977). The judgment is modified to reflect appellant's conviction for capital murder while committing or attempting to commit robbery as charged in Count I of the indictment. The conviction based on Count II of the indictment is removed from the judgment. As modified, the judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices Yeakel and Onion[*]

Modified and, as Modified, Affirmed

Filed:   September 12, 2002

Do Not Publish

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. ' 74.003(b) (West 1998).